SUNAMERICA FINANCE CORP., APPELLEE, *v.* WILLIAMS ET AL., APPELLANTS.

(No. 43138—Decided July 9, 1981.)

*Mr. Leonard Scharfeld,* for appellee.
*Mr. Joseph A. Antolin,* for appellants.

CORRIGAN, J. This is the appeal of Donald Williams from an order of the court of common pleas which, in pertinent part, granted plaintiff-appellee, SunAmerica Finance Corp., judgment on Williams' counterclaim against it.

The facts relevant to the disposition of this appeal are not disputed. On November 19, 1976, Williams borrowed $3,000 from SunAmerica. This loan was secured by a 1971 Cadillac and household goods owned, or to be subsequently acquired, by Williams.

On April 17, 1978, Williams refinanced this loan with SunAmerica, receiving an additional cash advance of $984.02. The total amount of this refinanced loan was $2,597.46.[1] The refinanced loan was secured by a 1970 Ford pickup truck and, again, household goods owned by Williams. The Truth-in-Lending disclosure statement given to Williams by SunAmerica on this occasion indicated that SunAmerica additionally retained, under this loan agreement, the security interest it had taken in Williams' property under the original 1976 loan agreement.

After making $2,047.10 in payments on the refinanced loan, Williams defaulted. SunAmerica declared the balance of the loan due under an acceleration clause in the loan agreement, and subsequently, on December 20, 1979, filed a complaint against Williams and his wife, Mary, for the amount due on the loan plus interest.[2]

Thereafter, Williams answered and counterclaimed against SunAmerica, alleging, *inter alia*, that SunAmerica had failed to comply with several disclosure requirements of the Federal Truth-in-Lending Act (Sections 1601 *et seq.*, Title 15, U.S. Code) and Regulation Z (12 C.F.R. 226.1 *et seq.*).

On August 22, 1980, Williams moved the trial court for leave to file a motion for summary judgment on his counterclaim. The record fails to indicate whether this motion was ever ruled upon by the lower court.

Trial of the claim and counterclaim commenced before the court, sitting as trier of fact, on October 14, 1980. Following the trial, the court, on October 17, 1980, entered a final judgment for SunAmerica on its claim in the amount prayed for in its complaint, $1,173.25, and on Williams' Truth-in-Lending Act (TILA) counterclaim.

In this appeal, timely taken, appellant Williams assigns errors relating only to the lower court's judgment on his TILA counterclaim. His assignments of error read as follows:

"I. The court entered judgment in favor of SunAmerica on the consumers' Truth-in-Lending Act defense and counterclaim despite violations of the Act which appeared on the face of the document.

"II. (a) The court abused its discretion in denying the consumers' timely request for leave to file summary judgment where no issues of material fact existed;

"(b) The court allowed the taking of testimony on the consumers' subjective knowledge of the credit terms, as relevant to the Truth-in-Lending claim when such evidence is neither relevant nor material;

"(c) The court applied equitable principles to the consumers' Truth-in-Lending claim when rendering judgment although the rights of all the parties were adequately defined at law."

I

Assignments of error I, II(b) and II(c) may be treated together. In assignment of error I, appellant argues that the trial court erred in failing to find that appellee SunAmerica violated the Truth-in-Lending Act in its 1978 consumer loan transaction by: (1) incorporating by reference in its disclosure statement a document of which appellant was not given a copy; (2) taking a security interest in after-acquired property, but failing to

---

[1] In actuality, Williams' 1978 loan from SunAmerica represented a second refinancing of his original 1976 loan. The facts attendant to the first refinancing of the loan in August 1977, however, are not relevant to this proceeding

[2] SunAmerica later filed an amended complaint against the Williamses on May 13, 1980 to correct an allegation in its original complaint relating to the identity of the loan involved.

disclose that such interest was limited by state law to property acquired within ten days of the time that value on the loan was given; (3) failing to disclose the total number of payments to be made on the refinanced loan; and (4) failing to disclose, in a logical and arithmetical sequence, the amounts financed in and the finance charge of the refinanced loan. In assignments of error II(b) and (c), appellant argues that the error enumerated in assignment of error I was, at least in part, caused by the lower court's erroneous admission of evidence at trial tending to show appellant's subjective knowledge of the terms of the loan at the time disclosure was made, and its application of equitable principles to appellant's TILA counterclaim. We are compelled to recognize merit, at least in part, in each of these assigned errors.

Prefatory to our discussion of the assigned errors, we observe that Congress' well-intentioned purpose in passing the Truth-in-Lending Act is expressly stated in Subsection (a) of the Act's provision:

"*§ 1601. Findings and declaration of purpose* (a) The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. *It is the purpose of this title [15 USCS §§ 1601 et seq.] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit,* and to protect the consumer against inaccurate and unfair credit billing and credit card practices." (Emphasis added.) Section 1601, Title 15, U.S. Code.

In order to enforce the Act's substantive provisions, Congress provided for, *inter alia,* individual civil actions as follows:

"*§ 1640. Civil liability*

"*(a) Amount of liability.* Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter [15 USCS §§ 1631 et seq.] or chapter 4 or 5 of this title [15 USCS §§ 1666 et seq., 1667 et seq.] with respect to any person is liable to such person in an amount equal to the sum of—

"(1) any actual damage sustained by such person as a result of the failure;

"(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under chapter 5 of this title [15 USCS §§ 1667 et seq.], 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; * * * and

"(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fee as determined by the court. * * *" Section 1640, Title 15, U.S. Code.

A reading of the foregoing provision, which is bolstered by the overwhelming majority of case decisions which have construed it, clearly reveals that, once a creditor violation of Truth-in-Lending requirements is proven, liability follows absolutely and the debtor must be awarded damages according to the scheme established by Congress. Under Subsection (a)(2)(A)(i) of Section 1640, a debtor who has suffered no actual damages as a result of his creditor's violation of the Act is nevertheless entitled to recover, in an individual action, twice the amount of the finance charge involved in their transaction, not less than $100 nor more than $1,000. Congress' probable intent in allowing recovery in instances where no damage has been done to the debtor may

have been to more fully insure creditor compliance with Truth-in-Lending requirements in all consumer loan transactions, despite the possible unattractiveness of debtors' claims in individual instances. However much we may disapprove of this aspect of the scheme adopted by Congress, because of its oftentimes effect of working what we, as judges, perceive to be unjust results in individual cases, we nonetheless are compelled to apply the law as it has been written or as it may reasonably be construed.

In the case *sub judice,* appellant alleged four violations by appellee SunAmerica of the Truth-in-Lending Act. Appellant neither alleged, nor attempted to prove at trial, that he was, in any way, damaged by these violations. Appellant instead argued that, under Subsection 1640(a)(2)(A)(i), he was entitled to have $1,000 set off from the remaining balance of $1,173.25 on the loan he had defaulted upon.

At trial, over appellant's objections, the trial court heard evidence tending to show appellant's subjective knowledge of the terms and conditions of his refinanced loan from SunAmerica. At the conclusion of the trial, the court announced that it had found no TILA violations to have been committed by SunAmerica. In announcing its decision, the court further observed, in essence, that, from the evidence presented, appellant had not been misled by appellee's disclosure statement and that it would be inequitable to grant appellant the relief he sought in his TILA counterclaim.

While we sympathize with the trial court's desire to reach an equitable result in this case, we may not affirm the judgment rendered on appellant's counterclaim.

As we previously intimated, equitable considerations do not control the outcome of an individual action brought under the Truth-in-Lending Act. Where a creditor

violation is proven, liability, as provided for in Section 1640, must follow. See *Ellis v. Hensley* (Aug. 16, 1979), Cuyahoga App. No. 39126, unreported.

Upon reviewing the disclosure statement given by SunAmerica to appellant Williams in connection with the 1978 refinanced loan, we conclude that two creditor violations of the Truth-in-Lending Act, raised below and here on appeal by appellant, are demonstrated on its face.

First, SunAmerica failed to "clearly, conspicuously, [and] in meaningful sequence" disclose to Williams the individually itemized amounts of credit it extended him, the total of these itemized amounts, its finance charge and annual percentage rate, and the total dollar amount, and schedule, of the payments to be made on the loan. See Sections 1631 and 1639, Title 15, U.S. Code; and 12 C.F.R. 226.6(a).

No particular disclosure format is mandated by the Truth-in-Lending Act or Regulation Z. However, the phrase "meaningful sequence" has been construed by The Fair Credit Practices Division of the Board of Governors of the Federal Reserve Board, and by various federal courts, to mean that the individual items for which disclosure is required must be arranged in a "logical and arithmetical" manner. See F.R.B. Staff Opin. Letters Nos. 780 and 1047, Paragraphs 31,102 and 31,387, CCH Consumer Credit Guide, Truth-in-Lending Special Releases-Correspondence (May 1974 to December 1977); and, *e.g., Allen v. Beneficial Finance Co. of Gary, Inc.* (C.A. 7, 1976), 531 F.2d 797, certiorari denied 429 U.S. 885. We find this construction reasonable and in harmony with the Congress' express declaration of purpose in enacting this legislation. Accordingly, we adopt it.

In the case *sub judice,* SunAmerica disclosed the required credit items to ap-

pellant Williams in the sequence portrayed below:

This sequence is not logical and arithmetical. The individual amounts financed are not all placed upon a single line, culminating in a total, so that the consumer may readily understand exactly what has been financed. Further, the annual percentage rate (APR) and finance charge are placed illogically apart from the total amount financed and the total of payments, thereby clouding the relationship between the latter two items. Finally, the total of payments is located apart from the information concerning the payments schedule, again illogically.

For the foregoing reasons, we conclude that, on its face, SunAmerica's disclosure statement violated the Truth-in-Lending Act, and Regulation Z, by failing to arrange the credit items, for which disclosure was required, in a meaningful sequence. It is not our intent, in so concluding, to dictate to SunAmerica, or other creditors, a particular disclosure format. We cannot, however, avoid reaching the conclusion in this case that the sequence utilized by SunAmerica was not meaningful in light of the clearly expressed purpose of the legislation involved.

Second, we also conclude that SunAmerica violated the Act by failing to make a "clear identification" of the property to which its security interest in the 1978 refinanced loan attached. See Section 1639(a)(8), Title 15, U.S. Code; and 12 C.F.R. 226.8(b)(5).

In its disclosure statement, SunAmerica stated that the refinanced loan was secured by a security agreement described within the disclosure statement and, as well, by an existing 1976 security agreement. Further on into the disclosure statement, it indicated that the security agreement set forth therein encompassed both the new security agreement and a copy of the "existing" security agreement. Items of property covered by the new agreement were to be identified by an asterisk (*).

No items of property listed in the disclosure statement given to Williams were asterisked, thus suggesting that no additional items of Williams' property were covered by the new agreement. A comparison of the new and old agreements, however, leads to the opposite conclusion. A copy of the 1976 agreement reveals that SunAmerica took a security interest in, *inter alia,* a 1971 Cadillac and after-acquired household

goods, neither of which were mentioned in the disclosure statement for the 1978 refinanced loan. Moreover, in the new security agreement, SunAmerica took a security interest in a 1970 Ford pickup truck, an item of property which was not listed in the 1976 security agreement.

Both below and here on appeal, appellant has argued that SunAmerica violated the Truth-in-Lending Act by failing to disclose, fully and consistent with state law, the nature of the security interest in after-acquired property it had taken. In response to this argument, SunAmerica offered a strained construction of its forms, and the standardized language therein, in support of its counter-argument that, under the 1978 refinanced loan, it took *no* security interest in appellant's after-acquired property.

We need not directly address these arguments. In our opinion, the controversy these arguments reflect emanates from the misuse by SunAmerica of its standardized disclosure statement form to which we have above alluded. If lawyers are justifiably embroiled in controversy by the language employed by a creditor in his disclosure of the security interest he has taken in his debtor's property, then it is likely that the debtor may have been left in the dark by the language, and *a fortiori,* that a "clear identification" of the security interest taken, mandated by the Truth-in-Lending Act, may not have been made.

We find such to have been the situation in this case. By its inconsistent and incomplete use of its standardized disclosure form in making the 1978 refinanced loan to Williams, SunAmerica failed to clearly identify the property of appellant to which its security interest attached. Accordingly, we conclude that SunAmerica committed a second TILA violation in the manner it disclosed to appellant the security interest it was taking in his property under the 1978 refinanced loan.

Appellant Williams has also argued that SunAmerica violated the Truth-in-Lending Act by failing to provide him with a copy of the 1976 security agreement, which was incorporated by reference into its disclosure statement, and by failing to disclose to him the total number of payments to be made on the refinanced loan. We find no merit in either of these arguments.

First, contrary to appellant's assertion, the disclosure statement did not merely incorporate the terms of the 1976 security agreement by reference, but included a copy of it. Moreover, we do not believe that the Truth-in-Lending Act requires that a consumer be provided with a copy of a document he already possesses.

Second, while some jurisdictions have held that a TILA violation occurs *per se* whenever a creditor fails to disclose in a single figure the total number of payments on a loan, we are inclined to hold otherwise. Where, as in the case *sub judice,* the creditor discloses that the total number of payments is one plus twenty-four, the consumer is required to make no legally significant computation in order to determine that twenty-five payments are to be made. The term "twenty-four plus one" is so easily identifiable with the number "twenty-five" that it should not be viewed as a computation reflecting inadequate creditor disclosure.

On the basis, however, of the two creditor violations we have found to exist on the face of the disclosure statement given by SunAmerica to Williams, we conclude that the trial court erred in granting SunAmerica judgment on Williams' TILA counterclaim. Accordingly, merit is recognized in assignment of error I and, to the extent that the trial court's decision was predicated upon equitable considerations and/or evidence admitted which tended to show Williams' subjective knowledge of the terms of the refinanced loan, in assignments of error II(b) and (c).

Appellant Williams was entitled to recover $1,000 on his TILA counterclaim,

as statutory damages, and the costs of his action below. Final judgment may be entered by this court on that counterclaim. See App. Rule 12(B).

Appellant further submits, however, that this cause should be remanded for a determination of his reasonable attorney's fees allowable under Section 1640 (a)(3), Title 15, U.S. Code. We disagree. Appellant presented no evidence at the trial below tending to show the value of the reasonable attorney's fees expended to prosecute his counterclaim. Therefore, the lower court committed no error in failing to award reasonable attorney's fees. Otherwise stated, the court's judgment, as to attorney's fees, was neither against the weight of the evidence nor contrary to law.

II

In assignment of error II(a), appellant argues that the trial court erred in denying his motion for leave to file a motion for summary judgment on his TILA counterclaim. The record does not reflect that the court ever denied appellant's motion for leave. In fact, there is no entry in the record indicating that the court ever ruled upon appellant's motion. Clearly, the trial court erred in failing to rule upon this pending motion which, if granted, would have obviated the need for a trial on appellant's counterclaim. This error, however, has been rendered moot by our recognition of merit in assignments of error I, II(b) and II(c), and our concomitant entering of final judgment for appellant on his counterclaim.

On the basis of the foregoing discussion of appellant's assigned errors, the judgment of the trial court is modified by entering final judgment for appellant on his TILA counterclaim in the amount of $1,000, and granting appellant the costs of his action below. As modified, the judgment of the trial court is affirmed.

*Judgment affirmed,
as modified.*

DAY, P.J., and PARRINO, J., concur.