TURNER CONSTRUCTION COMPANY,
APPELLEE AND CROSS-APPELLANT,
ET AL., *v.* COMMERCIAL UNION
INSURANCE COMPANY ET AL.,
APPELLANTS AND CROSS-APPELLEES.

(No. 48260 — Decided
January 23, 1985.)

*Albert J. Knopp* and *Diane P. Chapman,* for appellee and cross-appellant.

*Marvin L. Karp,* for appellants and cross-appellees.

MARKUS, P.J.   Two construction contractors obtained a declaratory judgment that two liability insurers had a duty to defend and indemnify them for a pending lawsuit. The insurers now accept those obligations but appeal because the trial court declined to apportion their insurance costs with other insurers who were not parties. The two contractors filed a joint notice of appeal, but only one has filed a brief and assignments of error. That contractor appeals from the trial court's denial of its claims for attorney fees and expenses in this declaratory relief action. Neither side's appeal has merit, so we affirm.

I

The parties submitted the case for decision by the trial court on the

pleadings and a stipulation of facts. The following portions of the stipulation are relevant to the construction contractor's appeal:

"7. On March 1, 1973, Turner and Midwest, as joint venturers, entered into a contract with Kleist Development Company ('Kleist') whereby the joint venture 'Turner-Midwest' agreed to act as project manager for the construction of the Bond Court Hotel in Cleveland, Ohio.

"8. On March 5, 1973, Commercial, as insurer, issued an insurance policy to Turner; Midwest; and the joint venture Turner-Midwest. The policy was expressly written to cover 'operations necessary and incidental to the construction of the [Bond Court Hotel].' A true and complete copy of that policy is attached to the complaint as Exhibit 'A'. The policy provided coverage from March 5, 1973 through March 5, 1976.

"9. On March 9, 1973, American, as insurer, issued an insurance policy to Turner; Midwest; Kleist; and Convention Center Inn, Ltd. A true and complete copy of that policy is attached to the complaint as Exhibit 'B'. The policy provided coverage from March 5, 1973 through March 5, 1975.

"10. Construction of the Bond Court Hotel began in 1973 and was completed in 1975.

"11. Prefabricated masonry panels form the facade of the Bond Court Hotel. Sarabond, a mortar additive manufactured and supplied by the Dow Chemical Company ('Dow') or by Dow's subsidiary Amspec was used in the fabrication of these panels. Fabrication of these panels began in 1974. By January of 1975, all of the masonry panels had been fabricated and erected on the exterior of the Bond Court Hotel. It has been determined that the degradation of Sarabond releases chloride ions which can cause and or/exacerbate the rusting of all metal in contact with Sarabond modified mortar.

"* * *

"14. On December 27, 1978, Convention Center Inn, Ltd. ('CCI') [the hotel owner] filed a complaint in the Court of Common Pleas, Cuyahoga County, Ohio, Case No. 79-993 030 captioned Convention Center Inn, Ltd. v. The Dow Chemical Company, et al. A true and complete copy of the complaint is attached to the complaint as Exhibit 'C'.

"* * *

"16. Initially, Commercial and American provided Midwest with a defense under a reservation of rights, but denied a defense to Turner.

"17. In January of 1981, Commercial withdrew its coverage and defense of Midwest.

"18. In the opinion of Dr. Edward M. Krokosky, a Professor of Civil Engineering at Carnegie Institute of Technology and whose biographical data is attached hereto as Exhibit 'A,' the process of corrosion of the Hotel's steel members in contact with or embedded in the Sarabond mortar commenced in 1974 and 1975 when the masonry panels containing the Sarabond mortar additive and reinforcing steel were placed on the Bond Court building and exposed to alternate cycles of wetting and drying caused by normal variations in weather conditions.

"19. The testimony and conclusions of Dr. Krokosky, are contained in his Affidavit which is attached hereto as Exhibit 'B.'

"20. The excessive rusting of the steel at the Bond Court Hotel, as alleged in the CCI complaint, was neither expected nor intended from the standpoint of the plaintiffs."

The following portions of the stipulation relate to the insurers' appeal:

"21. During the period of January 1, 1975 through 1979, (including the period of January 1, 1977 through January 1, 1978) Liberty Mutual Insurance Company issued a general liability policy with a combined single limit of $10,000,000 to Turner Construc-

tion Company. Liberty Mutual Insurance Company has never issued a policy to Midwest Construction Management Company or to the joint venture, Turner-Midwest. Liberty Mutual Insurance Company is providing Turner Construction Company with a defense in the *CCI* v. *Dow* case subject to a reservation of rights. Liberty Mutual Insurance Company disputes that it is required to provide either a defense or coverage to Turner Construction Company in the CCI litigation.

"22. The following insurance policies were issued to Convention Center Inn, Ltd.; Kleist Development Company; Turner Construction Company; Midwest Construction Management Company; and Turner Construction Company-Midwest Management Construction Company, a joint venture:

"(1) Columbus Casualty Co. (CNA) #RDU 186-3560-1/1/77-1/1/78 $5,000,000 excess of primary;

"(2) Lloyds and various Lloyds Cas. #SD2019/UJLO149 1/1/77-1/1/78 $5,000,000 excess of Columbia Casualty;

"(3) Zurich Insurance Co. #87-30-165 2/19/77-1/1/78 $10,000,000 excess of Lloyds etc."

From its review of the defendant insurers' policies and the hotel's complaint, the trial court ruled that the hotel's lawsuit alleged an "occurrence" covered by the insurers' policies:

"The Court further finds that the use of the product Sarabond used in the masonry panels resulted in an immediate diminution of property value and that this was an '*occurrence*' at the time of the construction of the hotel which then gave rise to the within defendants' duty to defend and indemnify these plaintiffs in the CCI litigation."

The trial court's judgment declared that the insurers are liable to the contractors "for the cost of defense in the CCI [hotel] litigation." It denied the contractors' request to recover their legal fees and expenses in the declaratory relief action, with this explanation:

"This Court further finds that the allegations in the CCI complaint do not indicate an instantaneous 'occurrence' clearly within the defendants' policy periods of coverage and, therefore, these defendants did have a genuine dispute as to their legal duty to defend."

The insurers' answer to the declaratory relief complaint made no reference to other insurers or other policies and made no request for affirmative relief. The trial court made no ruling about possible responsibilities of any other insurers.

## II

The construction contractor presents the following assignments of error:

"1. The court should affirm the judgment entry ordering Commercial Union and American to defend and indemnify Turner in the CCI litigation.

"2. The trial court erred in not awarding Turner its attorneys' fees and expenses in the declaratory judgment action.

"3. The court should remand this action to the trial court for an award of the litigation expenses incurred by Turner to date in: (1) its defense in the CCI litigation; (2) its prosecution of the declaratory judgment action; and (3) this appeal."

The first assignment requires no action by this court because it does not complain about any action by the trial court. Since no party challenges the ruling that the insurers have a duty to defend and indemnify for the hotel's lawsuit, we necessarily affirm that part of the judgment.

The contractor's remaining assignments challenge the denial of its claim for attorney fees in defending the hotel's case and asserting this indemnity claim. The trial court granted declaratory relief for the contractor's right to recover expenses to defend the hotel's case, presumably in another action. No

further relief was possible absent proof of the expense incurred.

With certain exceptions, a prevailing party cannot recover legal fees and expenses incurred in the same action. *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177 [75 O.O. 2d 224]. An insured or other contractual indemnitee may recover such costs for defending the underlying claim and enforcing the indemnity contract when (1) the contract expressly requires the indemnitor to defend against the underlying claim and to pay related costs and expenses, and (2) the indemnitor wrongfully refuses to provide that defense. *Motorists Mutual* v. *Trainor* (1973), 33 Ohio St. 2d 41 [62 O.O. 2d 402], paragraph four of the syllabus (for a liability insurance policy); *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122, paragraph two of the syllabus (for other indemnity contracts).

Language in the *Motorists Mutual* decision suggests that the insured can recover its legal expenses in enforcing the policy only when the insurer has "a clear legal duty to defend." See *Motorists Mutual* at 47. However, the *Allen* case made clear that the indemnitor's obligation to pay such expense results from its refusal to defend a claim when its contract requires that defense. See *Allen* at 125-126. If the indemnitor violates its contractual duty to defend, its "good faith or bad faith in reaching its decision is irrelevant" to its liability for expenses incurred to establish the contract. *Id.* at 126; see, also, *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177, 181, fn. 2.

Thus, the trial court incorrectly denied the contractor's claims for legal expenses in this action on the stated grounds. It makes no difference that the hotel's claim was not "clearly within the defendants' policy periods" or that the insurers had "a genuine dispute as to their legal duty to defend."

However, the record contains no evidence from which the trial court could make an award for such legal fees and expenses. There is no evidence to show what reasonable expense the contractor incurred to establish its indemnity rights. The complaint expressly sought such relief as damages or costs, but the contractor proffered no evidence to support those claims. Unlike its claim for uncertain future costs in defending the hotel's case, the expense involved in the declaratory relief action was fully incurred. Declaratory relief about such past expense would have been inappropriate.

The parties submitted this case for a complete resolution of all issues without including any stipulation or other evidence on this subject. Absent such evidence, the court was obliged to deny the request for claimed legal expense. *Freitag* v. *Bill Swad Datsun* (1981), 3 Ohio App. 3d 83, 86; *SunAmerica Finance Corp.* v. *Williams* (1981), 2 Ohio App. 3d 272, 278; *Murphy* v. *Koepke Motors* (March 29, 1984), Cuyahoga App. No. 47257, unreported.

The contractor's request for its legal fees and expenses on this appeal presents a different issue. If such fees were recoverable, this court would remand the case for their determination by the trial court. Cf. *Lee* v. *Lee* (1983), 10 Ohio App. 3d 113, 115-116. The indemnitee's right to recover legal expenses extends to defense costs which the indemnitor owed under its contract and the indemnitee's costs to establish its indemnity rights. It does not extend to the indemnitee's costs in seeking to collect debts owed by the indemnitor after a final adjudication of the indemnity rights.

Once a court has finally determined the indemnitor's disputed duties, the indemnitee has the same rights as any party seeking damages for breach of contract. Ordinarily, a party seeking legal fees pursuant to a contract cannot recover its expense in resisting an appeal from a judgment allowing them. Cf.

*Merlyn Enterprises* v. *Temple* (March 22, 1984), Cuyahoga App. No. 47181, unreported. A contrary rule may apply to legal fees allowed by statute. Cf. *Gianisi* v. *Primesite Roofing Co.* (Feb. 2, 1984), Cuyahoga App. No. 46911, unreported.

The indemnitee's right to recover legal expenses derives from the indemnitor's refusal to defend, not the indemnitor's failure to pay money. An insured can recover legal expense incurred to obtain money owed by an insurer only when the insurer breaches its duty to exercise good faith. Cf. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272. The trial court found that these insurers had a reasonable dispute about coverage, and we have no reason to decide otherwise.

In this case, the insurers' duty to defend was finally established by the trial court. The insurers do not challenge that duty on this appeal. The contractor's inability to recover previous legal expenses results from its failure to prove them in the action it brought for that purpose. It has no right to recover further expenses on an appeal which does not concern the insurers' duty to defend.

### III

In their sole assignment of error, the insurers assert:

"The trial court erred in failing to hold that defendants' obligation to defend and indemnify plaintiff Turner Construction Company should be prorated with that of other insurance companies which insured plaintiffs from 1975 through 1978."

This contention does not dispute the insurers' obligation to the contractors. Rather, it argues that several other insurers have a like duty, so those other insurers should share the mutual responsibility.

Proration can only occur among insurers who provided coverage for the same risk. Rules governing an insurer's duty to defend may vary, depending upon the language of the policies and whether a particular insurer has a primary or secondary obligation. See *Southgate State Bank & Trust Co.* v. *United Pacific Ins. Co.* (1979), 3 Kan. App. 2d 37, 588 P. 2d 486, 487; *Michigan Milk Producers Assn.* v. *Commercial Union Ins. Co.* (W.D. Mich. 1980), 493 F. Supp. 66, 72.

Without any evidence about the terms and conditions of the other policies, the trial court could not prorate the liability among other insurers. Further, the other insurers are not parties to this litigation, so the court could make no declaration which would prejudice their rights. R.C. 2721.12; cf. *Gannon* v. *Perk* (1976), 46 Ohio St. 2d 301, 310-312 [75 O.O.2d 358].

### IV

The errors assigned by each of the parties to this appeal and cross-appeal lack merit. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

JACKSON, J., concurs.

PATTON, J., dissents.

PATTON, J., dissenting. While I agree with the majority's position on Commercial Union's and American's appeal, I respectfully dissent from the position taken as to Turner Construction's cross-appeal for attorney fees. The majority holds that an insured may recover costs for enforcing an indemnity contract regardless of the indemnitor's good faith or bad faith in refusing to defend a claim, but affirms the trial court's denial of attorney fees nonetheless because Turner failed to submit evidence of the legal fees it had incurred. I concur in the holding that Turner is entitled to attorney fees; however, I would remand this case to the trial court for a determination of reasonable attorney fees.

The majority affirms the trial court's denial of attorney fees because Turner proffered no evidence to support its claim. I believe that in an action for declaratory judgment, the party seeking declaratory relief must first show that it is entitled to declaratory relief before a hearing on a claim for attorney fees can be held. A party should not be expected to prove the reasonableness of the requested attorney fees before it knows whether it will prevail on the declaratory judgment.

In the instant case, Turner sought declaratory relief so that Commercial Union and American would defend it in another suit. As the trial court recognized, there was a genuine dispute whether Commercial Union and American were under any duty to defend Turner. Because there was a genuine dispute, the trial court summarily dismissed Turner's demand for attorney fees.

As discussed in the majority opinion, the trial court applied an incorrect legal standard in requiring bad faith on Commercial Union's and American's part before awarding Turner attorney fees. I agree that good faith or bad faith is irrelevant. Had the trial court applied the proper standard to this issue, I do not believe it would have summarily dismissed Turner's claim. Accordingly, I would reverse this case as to the issue of Turner's attorney fees and remand it for a hearing solely on that issue.