NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0494n.06
Filed: July 14, 2006

Case Nos. 04-4047; 04-4050; 05-3079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CITY OF SANDUSKY, OHIO, | ) | |
| | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| COREGIS INSURANCE COMPANY, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |

BEFORE: SILER, BATCHELDER, and MOORE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. The City of Sandusky, Ohio ("Sandusky" or "the City") and its insurer, Coregis Insurance Co. ("Coregis"), each appeal various orders of the district court entered after Sandusky brought this action for a declaratory judgment against Coregis for the alleged breach of Coregis's duty to defend Sandusky in an action filed against Sandusky under the Americans With Disabilities Act. Because we find that an award under 42 U.S.C. § 1988 is not an award of "damages" or "costs" that was covered by the insurance policy, that Coregis breached its duty to defend by withdrawing its defense before the covered claims were finally dismissed from the underlying lawsuit, and that Sandusky should be awarded the cost of pursuing this action, we AFFIRM the judgment of the district court.

I. Procedural and Factual History

Sandusky is a member of Buckeye Ohio Risk Management Authority, Inc. ("BORMA"), which is a local government self-insurance pool. Coregis issued BORMA an insurance policy that

covered the member municipalities for certain compensable injuries during the insured period. The policy at issue here was valid from October 1, 1998, to October 1, 1999. The policy provides, in part:

> We will pay those sums that the Insured becomes legally obligated to pay as damages, [in] excess of the "self-insured retention" . . . , because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided. We have the right to defend or be associated with the defense of any claim or "suit" seeking damages.

The policy defines "personal injury" to include "injury, other than 'bodily injury' arising out of . . . discrimination . . . or violation of civil rights, including but not necessarily limited to violations of the Federal Civil Rights Act and similar state laws."

The Ability Center of Greater Toledo, along with several disabled persons in the Sandusky area ("the class plaintiffs") filed a class action complaint against Sandusky in the district court in September 1999, alleging that because of Sandusky's failure to install and failure to implement a schedule for installing curb ramps, individual class members were unable to travel safely on city streets. The complaint sought monetary damages from Sandusky under the Americans With Disabilities Act (a civil rights law), and also sought injunctive relief, punitive damages, and attorney fees under 42 U.S.C. § 1988. Coregis, acknowledging that it was responsible for providing a defense against the claims for money damages, agreed to defend the City under a reservation of rights. Coregis did not tell Sandusky that it would withdraw its defense if the claims for money damages were dismissed in a non-final order, nor did the policy specify when the duty to defend would terminate.

The parties filed cross-motions for summary judgment, which the district court granted in part and denied in part. The court granted summary judgment to the City on the class plaintiffs'

2

claims for compensatory and punitive damages for intentional discrimination and failure to implement a transition plan in violation of the ADA, and dismissed those claims. The court granted summary judgment to the plaintiffs on their claims that the City had failed to install or properly install curb cuts or ramps in violation of the ADA. Following entry of this order, several claims for equitable relief remained, as well as a claim for attorney fees under § 1988. The order dismissing the intentional discrimination claim was therefore not immediately appealable. Coregis, believing that it no longer had a duty to defend Sandusky because the claims for money damages had been dismissed, withdrew its defense, and Sandusky hired a new lawyer to defend it against the remaining claims. On January 17, 2003, the order dismissing the plaintiffs' claims for compensatory damages became final when the district court issued its final order in the case, granting injunctive relief and awarding attorney fees to the prevailing class plaintiffs under 42 U.S.C. § 1988.

On January 8, 2003, before that litigation was finally resolved, Sandusky filed this declaratory judgment action against Coregis, alleging that Coregis failed to meet its contractual obligation to provide Sandusky a defense in the class action. Coregis moved for summary judgment, arguing that once all of the claims for money damages had been dismissed from the suit on summary judgment, it had no further duty to provide a defense. Sandusky filed a cross-motion for summary judgment, arguing that (1) because the order dismissing the claims for money damages was not a final order, Coregis's duty to defend extended beyond the entry of that order; (2) Coregis had a duty to provide counsel through the appeal; and (3) the claims seeking attorney fees in the underlying action were claims for "damages" or "costs" that were covered under the policy, so not all claims for which Coregis was required to provide a defense had in fact been dismissed.

3

The district court found that Coregis had reserved the right to defend the underlying suit, but that the insurance contract was ambiguous "as to what constitutes a defense, association with defense, or scope of defense to be provided." The court concluded that the duty to defend extended through the expiration of the time for filing an appeal or resolving a timely appeal and that Coregis had breached that duty. Coregis timely appealed that order, which is docketed here as Case No. 04-4047.[1] The district court granted summary judgment to Coregis and denied it to Sandusky on the issue of attorney fees, finding that the § 1988 attorney fees awarded to the class plaintiffs in the underlying class action were not "damages" or "costs" as contemplated in the language of the insurance contract. Sandusky timely appealed that order, which is docketed here as Case No. 04-4050. As a result of the district court's determination that Coregis had breached its duty to defend, Sandusky filed a motion for an award of attorney fees and pre-judgment interest for having to bring this action. The district court granted the motion on November 24, 2004, finding that Ohio law provides such fees and interest as a matter of course when an insurer breaches its duty to defend. Coregis timely appealed that decision, docketed here as Case No. 05-3079.

## II. Standard of Review

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emor Marketing Co.,* 973 F.2d 1296, 1303 (6th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1]Coregis also filed a motion for relief from judgment in the district court as to this issue, which the district court denied. Coregis did not appeal this determination.

4

party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  Case No. 04-4050

Sandusky appeals the judgment of the district court refusing to award it the attorney fees that it was forced to pay to the prevailing class plaintiffs under 42 U.S.C. § 1988 in the underlying action. That statute provides: "[i]n any action or proceeding to enforce a provision of [certain enumerated statutes] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The district court in the underlying suit awarded the class plaintiffs $92,683.58 in attorney fees under 42 U.S.C. § 1988, and Sandusky contends it purchased insurance against such awards, as demonstrated by policy language providing coverage for "damages" and "costs." The district court in this case found that the award of fees and costs in the underlying suit was not covered by the insurance policy because

> the insurance contract specifically claims that damages mean monetary sums. There is no indication that such monetary funds [sic] include attorney fees incurred in obtaining such monetary sums. The Magistrate is not convinced that language of the insurance contract demonstrates persuasively that in this particular policy, the word

5

"damages" contemplates anything other than its traditional meaning: money damages arising out of bodily injury or property damage liability covered by the insurance contract.

It also found that the policy did not provide coverage for "costs" as defined in the insurance contract. Accordingly, the district court refused to require Coregis to reimburse Sandusky for this amount.

## A. Damages

The Coregis policy provides that it is obligated to pay those sums that Sandusky becomes legally obligated to pay as "damages," and that "damages" means "monetary sums and excludes all forms of injunctive relief and declaratory judgments." We have noted that Congress took great pains to make sure that attorney fees awarded under § 1988 were awarded as "costs" rather than as "damages" because of states' Eleventh Amendment immunity from claims for "damages." *See Sullivan Cty., Tenn. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991) (citing *Oates v. Oates*, 866 F.2d 203, 206 (6th Cir. 1989)). "Congress is free to put attorney fees in either category," we said, "but when an act of Congress unambiguously assigns such fees to one category, the courts are not free to pretend that Congress has assigned them to the other." *Id.* However, an insurer is free to specify exactly what constitutes "costs" and what constitutes "damages" for purposes of the insurance coverage, and can include costs taxed by the court in the category of "damages" if it so chooses. *Id.* So where an insurance contract does not rely on the traditional legal definitions of "damages," the question of whether an award fits into this category under the contract is one of state insurance law.

Ohio law provides that, where a contract term is free of ambiguity, the contract is to be construed according to its ordinary meaning. *See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). We find no ambiguity either in the contract's term

6

"damages" or in its definition – "damages means monetary sums and excludes all forms of injunctive relief and declaratory judgments."[2] Though the contract seems to allow for more to be considered "damages" than is included within the classic legal definition of the term, it certainly does not include sums payable only because of the success of claims that were plainly not otherwise covered by the insurance policy ("[w]e will pay those sums that the Insured becomes legally obligated to pay as damages . . . *because of* 'personal injury' . . . *to which this insurance applies*") (emphasis added).

A prayer for § 1988 relief is not its own independent claim; rather, it is parasitic to the success of other claims for relief. *See* 42 U.S.C. § 1988(b) (awarding attorney fees to a "prevailing party" on certain claims). The award of attorney fees as part of the costs under § 1988 in the underlying suit here was due to the success of the class plaintiffs on equitable claims that were plainly not covered by the Coregis insurance contract. We find no specific language in the insurance contract providing that a § 1988 award under such circumstances is to be itself a claim for "damages" covered by the contract, and we therefore hold that the contract plainly did not contemplate such coverage.[3] Because the attorney fees awarded to the class plaintiffs in the underlying suit were not "damages" as contemplated by the insurance contract, Coregis had no duty to indemnify Sandusky for their payment.

---

[2]Because of the lack of ambiguity, this case is distinguished from Ohio cases finding that § 1988 awards can be considered to be "damages" where the insurance contract provides coverage for such but the meaning of the term is ambiguous. *See, e.g., City of Kirtland v. Western World Ins. Co.*, 540 N.E.2d 282, 283-84 (Ohio App. 1988) (where "money damages" was not defined, the term was ambiguous and could include a § 1988 award the insured was forced to pay to plaintiffs in an underlying action); *Sylvania Twp. Bd. of Trustees v. Twin City Fire Ins. Co.*, 2004 WL 226115, *4-6 (Ohio App. 2004) (finding "damages" to be ambiguous and therefore possibly including an award of attorney fees that the insured had to pay as a result of a state statute much like § 1988).

[3]We express no opinion as to whether a § 1988 award given to a prevailing party that depended, at least in part, on the success of claims that were affirmatively covered by the insurance agreement, could be considered a claim for "damages" under the language of this policy.

7

**B. Costs**

Sandusky also argues that the portion of the insurance policy dealing with "costs" provides coverage for § 1988 awards. The policy states, in part, that:

> Allocated claims expenses and legal costs include the following: (1) Payments to attorneys, law firms, . . . and all other services and expenses in connection with the investigation and settlement of claims and the defense [of] legal proceedings as defined in the policy.
> . . .
> [If the amount to be paid by the insured as a judgment or as the result of a settlement exceeds the amount the insured has agreed to pay as self-insured] then we, if approved such settlement or consented to the proceedings continuing, shall contribute to the costs incurred by you in the ratio that our proportion of the ultimate loss, as finally adjusted, bears to the whole amount of such ultimate loss.

The policy language is again unambiguous and provides coverage for certain "costs" incurred. However, it specifically limits any recovery from Coregis to its proportional share.[4] Although Congress has categorized attorney fee awards under § 1988 as "costs," *see Sullivan Cty.*, 925 F.2d at 153, any such "costs" incurred in this litigation related only to claims for which equitable relief was sought. Because the policy did not insure against claims for equitable relief, claims covered by the insurance policy represented no portion of the "ultimate loss" to Sandusky, and the district court properly denied any recovery against Coregis for the attorney fees awarded under § 1988 to the prevailing class plaintiffs.

## IV. Case No. 04-4047

---

[4]The policy therefore does not provide insurance against the insured's having to pay out "costs" as it does for "damages," but only provides a mechanism for dividing the costs that Coregis would incur in defending the action, including claims for which it does not provide coverage. This is to be contrasted with the policy at issue in *Sullivan County*, where a portion of the insurance policy that the insured did not purchase would have covered the insured for legal "costs" incurred, much like the portion of the policy that was purchased included coverage for "damages" incurred. *See Sullivan County*, 925 F.2d at 152.

Coregis appeals the judgment of the district court finding that Coregis breached its duty to defend by withdrawing its defense after all claims for money damages had been dismissed on summary judgment, but before a final order was entered or an appeal pursued. Sandusky contends, and the district court agreed, that because the insurance contract does not provide a specific point at which Coregis's duty to defend ends, the contract is ambiguous as to what "the right to defend or be associated with the defense" means, and these terms must be construed against the insurer to mean that it must continue to defend the insured until the time to file an appeal has expired or through a timely filed appeal.[5]

An insurer's duty to defend continues until no remaining claims against an insured are covered by the subject policy. *Ins. Co. of N. Am. v. Travelers Ins. Co.*, 692 N.E.2d 1028, 1035 (Ohio App. 1997); *Wedge Prods. v. Hartford Equity Sales Co.*, 692 N.E.2d 1028, 1034-35 (Ohio 1987). But where the duty to defend is unclear, the insurer must accept the defense, even if it is under a reservation of rights. *Grange Mut. Cas. Co. v. Rosko*, 767 N.E.2d 1225, 1230-31 (Ohio App. 2001); *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 557-58 (Ohio 1984); *Monsler v. Cincinnati Cas. Co.*, 598 N.E.2d 1203, 1206 (Ohio App. 1991); *Cincinnati Ins. Co. v. Anders*, 789 N.E.2d 1094, 1099 (Ohio 2003) (no duty to defend only when claims are indisputably outside of insurance coverage). Because the insurer is the party that drafts the contract, any exclusions from coverage or limitation of duties must be clear and exact, and the insurer bears the burden of showing

---

[5]Sandusky also argued that the duty to defend remained because a claim covered by the insurance policy (the § 1988 claim for "damages" or "costs") remained active in the case even after the grant of summary judgment on the intentional discrimination claims. However, because we have determined that the class plaintiffs' request for an award under § 1988 was not a claim for "damages" or "costs" covered under the policy, this argument is without merit.

that an exclusion applies. *St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 992-93 (6th Cir. 2003) (citing Ohio cases).

Sandusky acknowledges that the precise question here – whether an insurer has a duty to defend when the covered claims have been dismissed in a non-final order of summary judgment – has not been addressed in the Ohio courts. However, two cases squarely on point from other states have addressed the issue and have held that, absent language in the contract to the contrary, the duty to defend continues until there is a final judgment on the covered claims. *See Meadowbrok, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411 (Minn. 1997); *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 832 P.2d 733 (Haw. 1992).

We believe the district court correctly decided the issue. The phrase "defend or be associated with the defense" is ambiguous, so it must be construed against the insurer. *See Holliman v. Allstate Ins. Co.*, 715 N.E.2d 532, 536 (Ohio 1999); *Derr v. Westfield Cos.*, 589 N.E.2d 1278, 1282 (Ohio 1992). The language in the contract providing Coregis with the right to undertake the defense of an action could have provided that it had the right to withdraw its defense before a final judgment was entered or an appeal pursued. It did not, and in the absence of such language it was the reasonable expectation of the insured that Coregis would maintain its defense at least through a final judgment. While we are sympathetic to Coregis's argument that this holding results in a windfall for insureds because it forces insurers to provide a defense to claims plainly not covered by the insurance contract, Ohio law is clear that an insurer must precisely define the scope of its defense if it expects to defend on the ground that its duty was extinguished. *See St. Marys*, 332 F.3d at 992-93.

### V. Case No. 05-3079

Coregis also appeals the judgment of the district court awarding Sandusky attorney fees, costs, and pre-judgment interest attributable to Sandusky's prosecuting this action for breach of the duty to defend. Pre-1999 Ohio case law provides that attorney fees, costs, and prejudgment interest may be awarded to an insured where its insurer breaches its duty to defend. *See* OHIO REV. CODE § 1343.03(A); *Allen v. Standard Oil Co.*, 443 N.E.2d 497 (Ohio 1982) ("When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor."). *See also City of Willoughby Hills v. Cincinnati Ins. Co.*, 499 N.E.2d 31, 34-35 (Ohio App. 1986); *Turner Constr. Co. v. Commercial Union Ins. Co.*, 492 N.E.2d 836, 839-40 (Ohio App. 1985).

However, in 1999, Ohio Revised Code § 2721.16 became effective. This statute prohibits an award of attorney fees in a declaratory judgment action except where "[a] section of the Revised Code explicitly authorizes a court of record to award attorney's fees . . . ," where "[a]n award of attorney's fees is authorized by section 2323.51 of the Revised Code" (which provides an award of attorney fees as a sanction for frivolous conduct), where authorized by the Civil Rules, or where a court has awarded the attorney fees as an award of punitive or exemplary damages. OHIO REV. CODE § 2721.16(A)(1)(a) & (b). We have previously noted this change in law, *see Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 694-95 (6th Cir. 2000), and Ohio courts have applied § 2721.16 to preclude an award of attorney fees in a failure-to-defend declaratory judgment action. *See, e.g., Cincinnati Ins. Co. v. Colelli & Assocs., Inc.*, 2004 WL 1969367, *2-3 (Ohio Ct. App. 2004). *See also Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 798 (6th Cir. 2002).

11

None of the exceptions listed in the statute appear to apply to Sandusky's declaratory judgment action, so the award would have been precluded by this section of the Revised Code had Coregis raised it. However, Coregis has not raised the applicability of § 2721.16 at any stage of this litigation. The argument is therefore deemed waived, and we will affirm the judgment of the district court awarding Sandusky attorney fees, costs, and pre-judgment interest for pursuing this action under the pre-1999 rule.

## VI.  Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**KAREN NELSON MOORE, concurring in part and dissenting in part.** I concur in the majority opinion's holding that Coregis breached its duty to defend Sandusky. However, I believe that the award of attorney fees against Sandusky should properly be considered a form of damages under the language of the policy and according to the relevant Ohio precedent, and I respectfully dissent as to this issue.

The majority asserts that the contractual definition of damages is unambiguous and that it clearly does not extend to fees incurred on the basis of claims seeking non-monetary relief. Majority Op. at 7. As support for this proposition, the majority highlights the following policy language: "We will pay those sums that the Insured becomes legally obligated to pay as damages . . . because of 'personal injury' . . . to which this insurance applies." Joint Appendix ("J.A.") at 96. This statement requires that the damages flow from a covered *injury*, but it does not provide any clarification as to the definition of *damages*. Because there is no dispute that the § 1988 fee award was incurred by Sandusky as a result of the underlying discrimination suit, this language is not relevant to the underlying question of whether the attorney fees can be considered damages under the contract.

We are thus still left with the following contractual definition of damages: "With respect to 'personal injury[,]' damages means monetary sums and excludes all forms of injunctive relief and declaratory judgments." J.A. at 103. The term "monetary sums" is not defined, just as the term "money damages" was not defined in *City of Kirtland v. Western World Insurance Co.*, 540 N.E.2d 282, 285 (Ohio Ct. App. 1988). The *Kirtland* court concluded that "[s]ince the term 'money damages' was not defined in the policy, for purposes of this discussion and under these circumstances, this court holds that the attorney fees awarded appellee were money damages." *Id.*

13

at 285. In that case, the city sought indemnity for attorney fees it had to pay in the underlying suit, which only involved claims for equitable relief. *Id*. at 167. The insurance policy did not require the insurance company to "make payment for loss in connection with" actions seeking equitable relief, just as in the case before us. *Id*. at 284-85. Given this, *Kirtland*'s holding that the insurer was obligated to pay the attorney fees undermines the majority's argument that the contractual definition of damages "does not include sums payable only because of the success of claims that were plainly not otherwise covered by the insurance policy." Majority Op. at 7. The majority distinguishes *Kirtland* on the basis that the term "money damages" was ambiguous, but it fails to acknowledge the similarity of the language and the fact that the underlying claims in *Kirtland* were equitable. Majority Op. at 7 n.2.

In 2004, the Ohio Court of Appeals again analyzed whether an award of attorney fees as a form of costs pursuant to an Ohio statute were properly considered "damages" under an insurance policy. *Sylvania Twp. Bd. of Trs. v. Twin City Fire Ins. Co.*, No. L-03-1075, 2004 WL 226115, at *2 (Ohio Ct. App. Feb. 6, 2004).[6] Unlike in *Kirtland*, the policy in *Sylvania* did define "damages" as "monetary judgment, award or settlement . . ." *Id*. at *5. However, the court noted that this definition was similar to the policy provision in *Kirtland* because it "[did] not uniquely define key terms — 'monetary judgment' or 'award.'" *Id*. The court then looked to the "common meaning" of "monetary judgment" and "award," and it concluded that such terms could include an award of

---

[6]Ohio Supreme Court Rule 4(A) for the Reporting of Opinions states as follows: "Notwithstanding the prior versions of these rules, designations of, and distinctions between, 'controlling' and 'persuasive' opinions of the courts of appeals based merely upon whether they have been published in the Ohio Official Reports are abolished." (These Rules became effective on May 1, 2002.) Rule 4(B) states that "[a]ll court of appeals opinions issued after the effective date of these rules may be cited as legal authority and weighted as deemed appropriate by the courts."

14

attorney fees.  *Id*.  There is no meaningful distinction between the terms "monetary judgment" and "monetary sums," except the latter may in fact be broader in scope.  *Sylvania* thus provides further support for Sandusky's argument that the term "monetary sums" is ambiguous.

Because this is a diversity case, we are bound to follow the Ohio state court decisions in *Kirtland* and *Sylvania*.  *See Ruth v. Bituminous Cas. Corp.*, 427 F.2d 290, 292 (6th Cir. 1970) ("[W]here the highest court of the State has not spoken, this Court is obligated to follow published intermediate state appellate court decisions unless we are convinced that the highest state court would decide differently.").  There is no basis to believe that the Ohio Supreme Court would decide this issue differently, in light of two different appellate court decisions.  Rather, the existence of these two cases supports Sandusky's position that the policy language was in fact "reasonably susceptible of more than one interpretation" and accordingly should be "construed strictly against [Coregis]."  *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988).  Accordingly, I would reverse the district court's judgment against Sandusky on its claim that it is entitled to reimbursement from Coregis for the § 1988 attorney fees awarded to the plaintiffs in the underlying class action suit.