NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0569n.06

Case Nos. 14-4073/4074

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 13, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ACE EUROPEAN GROUP, LIMITED, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| ABERCROMBIE & FITCH CO.; | ) | OHIO (14-4073) |
| ABERCROMBIE & FITCH STORES, INC.; | ) | |
| HOLLISTER, | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

| | | |
|---|---|---|
| ABERCROMBIE & FITCH CO.; | ) | |
| ABERCROMBIE & FITCH STORES, INC.; | ) | |
| HOLLISTER CO., | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
|     Plaintiffs-Appellees, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO (14-4074) |
| v. | ) | |
| | ) | |
| ACE EUROPEAN GROUP, LIMITED, | ) | |
| | ) | |
|     Defendant-Appellant. | ) | |

BEFORE: MOORE and COOK, Circuit Judges; COHN, District Judge.[*]

COOK, Circuit Judge. The parties dispute whether the insurance policy ACE European

Group, Ltd. sold to Abercrombie & Fitch Co. obliges ACE to defend Abercrombie and its

---

[*]The Honorable Avern L. Cohn, Senior United States District Judge for the Eastern
District of Michigan, sitting by designation.

subsidiaries (collectively "Abercrombie") in three pending class-action lawsuits. The district court found that ACE has a duty to defend and ordered it to assume Abercrombie's defense as well as to pay all costs and attorney's fees already incurred. ACE appeals these interlocutory orders, and we AFFIRM the district court.

I.

During the 2009 holiday season, Abercrombie gave a $25 promotional gift card to customers who, depending on the store, purchased either $75- or $100-worth of goods. Although Abercrombie refused to honor the cards after January 30, 2010, some of them had the phrase "no expiration date" printed on the surface and others included no information regarding their expiry. Abercrombie customers filed three class-action lawsuits still pending in Illinois, California, and Ohio. In each action, the plaintiffs assert claims for consumer fraud stemming from Abercrombie's refusal to honor the cards. In two actions, the plaintiffs also pursue a breach of contract claim.

Abercrombie, relying on the "Advertisers and Internet Liability" policy that it purchased from ACE in September 2009, filed an insurance claim requesting that ACE defend it in all three suits. But ACE denied the claim, insisting that the subject matter of the actions falls outside the policy's coverage. As a result, Abercrombie defended itself, arguing that it took a number of steps to inform shoppers about the January 30 expiration date.

Abercrombie also sued ACE for breach of contract and related claims in the Ohio Court of Common Pleas, later removed to the District Court for the Southern District of Ohio (No. 14-4074). A few hours after Abercrombie filed suit, ACE sought a declaratory judgment in the Northern District of Illinois (No. 14-4073). That court transferred the declaratory action to the Southern District of Ohio, and both cases proceeded together.

After two years of motion practice, the court found that ACE breached its duty to defend in all three class actions and granted partial judgment on the pleadings for Abercrombie. Abercrombie then moved for an order directing ACE to reimburse it for costs and attorney's fees incurred in the class actions as well as for attorney's fees incurred in vindicating Abercrombie's rights under the policy. The court found ACE liable for the full amount of Abercrombie's past defense costs and confirmed ACE's duty to defend Abercrombie going forward but it postponed ruling on attorney's fees and stayed enforcement of its order pending appeal.

## II.

This court has jurisdiction over ACE's consolidated interlocutory appeals under 28 U.S.C. § 1292(a)(1). The district court ordered ACE to assume Abercrombie's defense and to pay past defense costs immediately. These orders enjoin ACE to act and are therefore subject to interlocutory review. *See Abercrombie & Fitch Co. v. Fed. Ins. Co.*, 370 F. App'x 563, 567–68 (6th Cir. 2010).

## III.

The district court's interpretation of the insurance policy forms the legal basis for its injunction. The policy provides—and both parties agree—that it "shall be governed by and construed in accordance with the law of Ohio." (R. 4-1, Policy at 52.) [1] Under Ohio law, we review the district court's contract interpretation de novo. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013). And we give effect to the contracting parties' intent by "examin[ing] the insurance contract as a whole" and "look[ing] to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "Where

---

[1]All record citations are to Case No. 2:11-CV-01114, the suit Abercrombie filed in Ohio and the one spawning Appeal No. 14-4074.

provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989). "This is particularly true when considering provisions that purport to limit or qualify coverage under the policy." *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011).

A.      *ACE's Contractual Duty to Defend*

ACE argues that it has no duty to defend Abercrombie because the subject matter of the underlying class actions falls within two of the policy's exclusions. The policy provides, in relevant part:

> We [ACE] shall not be liable for any damages or claims expenses directly or indirectly arising out of or in any way attributable to:
>
> . . . .
>
> (h) any liability assumed under any contract or agreement including any breach of express warranty or guarantee, except and to the extent you [Abercrombie] would have been liable in the absence of such contract or agreement, except this exclusion does not apply to liability assumed under contract in respect of a media communication;
>
> . . . .
>
> (o) coupons, prize discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount.

(R. 4-1, Policy at 21–23.)  We examine the applicability of each exclusion in turn.

1.      *Exclusion (h)*

ACE advances two arguments with respect to exclusion (h). First, it contends that the promotional gift cards are themselves contracts such that the policy excludes coverage for any cause of action arising from the cards. In support, ACE recites several online-dictionary

- 4 -

definitions for "contract" and "agreement" before conclusorily asserting that the cards "fit well within the natural and commonly accepted meaning of both [words]." (ACE Br. at 41.) But, as the online definitions make clear, the word "contract" has legal import. Its meaning flows from the law of Ohio governing interpretation of this policy, not a dictionary.

Under Ohio law, contracts are legally enforceable agreements consisting of—among other things—offer, acceptance, and consideration. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). Under this definition, we do not understand the promotional gift cards to be "contracts" within the meaning of exclusion (h). Rather, the cards are contract components; they form part of the consideration exchanged in the sales contracts entered during Abercrombie's Christmas promotion. Abercrombie advertised—and each customer received—a promotional gift card in return for purchasing either $75- or $100-worth of goods. The class plaintiffs allege that Abercrombie breached the sales contract by failing to give them what they bargained for: an expiration-less gift card. Later in its briefing, ACE acknowledges that the cards formed part of the consideration for these sales, impliedly conceding that they do not constitute independent contracts. (ACE Br. at 42.) Thus, the fact that the class actions arise from a dispute over the cards does not trigger exclusion (h).

Next, ACE argues that the exclusion applies because the class actions arise entirely out of Abercrombie's alleged breach of these sales contracts. But Ohio precedent holds that "[o]nce an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 837 (Ohio 2006). Thus, while the district court found that the breach-of-contract claims might have fallen within the exclusion, it

nevertheless ruled that ACE must defend Abercrombie because in each action the class plaintiffs also allege consumer fraud—a claim covered by the policy.

As the district court noted, the contract and consumer-fraud claims are legally distinct. In the contract claims, the class plaintiffs allege that their sales contracts with Abercrombie included an implied term that the promotional gift cards would not expire. In the consumer-fraud claims, they seek to hold Abercrombie liable for alleged misrepresentations that the promotional gift cards had no expiration date. Although the two sets of claims arise out of the same nexus of operative facts, neither of the wrongful acts alleged caused the other. *See Westfield Ins. Co. v. Factfinder Mktg. Research, Inc.*, 860 N.E.2d 145, 154 (Ohio Ct. App. 2006) (requiring a causal connection to find that one cause of action "aris[es] out of" another). In fact, certain theories of recovery are mutually exclusive. The class plaintiffs could prevail on their fraud claims by proving that Abercrombie misled them into believing the gift cards had no expiration date when they actually did. But in so doing, the plaintiffs would simultaneously disprove their contract claims, which depend on the cards having no expiration. Likewise, in seeking to prove the existence of an implied contractual term that the cards never expired, they would undermine their fraud claims, which require a misrepresentation to that effect.

We therefore reject ACE's argument that the consumer-fraud claims derive from the contract claims because the two do not rise and fall together. *See Westfield*, 860 N.E.2d at 154. And because each of the underlying class actions asserts a consumer-fraud claim covered by the policy, exclusion (h) does not absolve ACE of its duty to defend in any of them. *See Sharonville*, 846 N.E.2d at 837.

>    *2.    Exclusion (o)*

ACE also contends that the consumer-fraud claims fall within exclusion (o) for claims "arising out of . . . coupons, prize discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount." (*See* R. 4-1, Policy at 21–23.) Specifically, it characterizes the promotional gift cards at issue as "coupons," again relying on various online-dictionary definitions to arrive at the word's plain meaning. But ACE cannot shoehorn the promotional gift cards into any of the offered definitions.

ACE first cites the final definition of "coupon" listed in Merriam-Webster's online dictionary: "a part of a printed advertisement to be cut off to use as an order blank or inquiry form or to obtain a discount on merchandise or services." *Coupon*, Merriam-Webster, http://www.merriam-webster.com/dictionary/coupon (last visited July 8, 2015). Defining a coupon by its presence in an advertisement suggests that a retailer sends coupons to consumers *before* they transact business with it.[2] The retailer unilaterally gives consumers a coupon to entice them into the store in the first place. This is a poor description of the promotional gift cards, which Abercrombie distributed only to customers who had already purchased goods and only for use in future transactions.

ACE's other definition comes from Oxford's online dictionary, which defines "coupon" as "a voucher entitling the holder to a discount for a particular product." *Coupon*, Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/coupon (last visited July 20, 2015). This, too, inaccurately describes the cards. Abercrombie did not limit the promotional gift cards to use on any "particular product." Instead, the cards operated as a form of tender good for use on any item that Abercrombie sells. Unlike a coupon, customers kept the

---

[2]In its brief, ACE omits the beginning of this definition—the part referring to "a printed advertisement." (ACE Br. at 28.) We quote the missing portion because we find it instructive.

unused value on the card for a future purchase—at least until the expiration date. Furthermore, the cards offered more than a "discount" to customers who purchased an item under $25 or who presented multiple gift cards to obtain an item of greater value for free.

ACE urges the court to read "coupon" broadly, pointing to the more expansive construction some courts and agencies give the word when interpreting regulations or statutes. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 636 (7th Cir. 2014) (subjecting a proposed settlement to the limitations in CAFA's "Coupon Settlement" provisions because members would receive a $10 "voucher" good for any purchase at the defendant's stores), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015). But the comparison is inapposite. Statutory construction looks to legislative intent while contract construction looks to the intent of the parties and resolves ambiguities against the drafting party. *See Hunter*, 948 N.E.2d at 935; *Galatis*, 797 N.E.2d at 1261; *Cline v. Ohio Bureau of Motor Vehicles*, 573 N.E.2d 77, 80 (Ohio 1991). A court, therefore, could easily reconcile a finding that the promotional gift cards are not coupons for purposes of the insurance policy with a finding that they qualify as coupons within the meaning of a class-action or consumer-protection statute.

ACE neither shows that the plain and ordinary meaning of "coupon" embraces the promotional gift cards nor justifies looking beyond the policy's plain language. Thus, exclusion (o) does not relieve ACE of its duty to defend.

B.     *The Extent of ACE's Duty*

In the alternative, ACE argues that its duty to defend in the Illinois class action (the "*Boundas* Action") has already terminated. On May 2, 2011, the trial court in that case dismissed the plaintiffs' consumer-fraud claim under Rule 12(b)(6), leaving only their excluded contract claim. ACE contends that its duty to defend ended with the dismissal of the covered

claim. The district court rejected this argument, holding that ACE's duty continues at least until the trial court in the *Boundas* Action issues a final, appealable judgment on the covered claim.

The district court relied primarily on our decision in *City of Sandusky v. Coregis Ins. Co.*, 192 F. App'x 355 (6th Cir. 2006). In that case, an insurer promised to "defend [the City of Sandusky] or be associated with a defense" against discrimination claims by the City's employees. *Id.* at 357. In accord with the policy, the insurer hired counsel to defend the City against a class of plaintiffs seeking both damages—claims that the policy obliged the insurer to defend—and equitable relief—claims that the policy excluded. When the district court granted a motion for summary judgment on the damages claims, the insurer withdrew its attorneys, and the City sued for continued coverage. *Id.* at 357–58. On appeal, we first looked to the contract to determine when the insurer's duty to defend terminated. But finding this language ambiguous, we applied Ohio law and held that silence or ambiguity regarding the termination of the duty to defend results in the duty continuing until the trial court issues a final judgment on all covered claims. *Id.* at 361–62.

Following *Sandusky*, the district court first examined the policy language. Finding it ambiguous, the court construed that ambiguity against ACE and ruled that its duty to defend in the *Boundas* Action continues until final judgment on the consumer-fraud claim. In their appellate briefs, neither party attempts to show that the policy language unambiguously resolves the matter at *Sandusky*'s first step. Instead, they set about attacking and defending the interpretation of Ohio law that underpins *Sandusky*'s second step.

We hew to the interpretation of Ohio law articulated in *Sandusky*. Where the contract is ambiguous, the insurer has a duty to defend "until no remaining claims against an insured are covered by the subject policy." *Sandusky*, 192 F. App'x at 361; *see also Sharonville*, 846 N.E.2d

at 837 (discussing the breadth of an insurer's duty to defend); *Lane*, 543 N.E.2d at 490 (holding that courts construe ambiguous language in favor of the insured); *Wedge Prods., Inc. v. Hartford Equity Sales Co.*, 509 N.E.2d 74, 76 (Ohio 1987) (explaining that the duty to defend terminates when "no possibility of coverage under the policy" exists). That requires, at the very least, a final, appealable judgment on all covered claims. *Sandusky*, 192 F. App'x at 362. Despite the potential for a windfall to insureds, "Ohio law is clear that an insurer must precisely define the scope of its defense if it expects to defend [the withdrawal of counsel] on the ground that its duty was extinguished." *Id.*

ACE grumbles that *Sandusky* espouses a "minority" position among American jurisdictions, but that is irrelevant. This court must ascertain how the Ohio Supreme Court would rule, regardless of whether the outcome constitutes a majority or minority position. *See Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995). ACE never compares the state law underpinning these extra-jurisdictional cases to the law of Ohio nor otherwise explains how those decisions should guide our interpretation of Ohio law.[3] Moreover, the district court's admirable survey of these cases reveals that the holdings are more nuanced and the weight of authority more balanced than ACE suggests.

ACE does cite one authoritative case, but it is inapposite. *See City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555 (Ohio 1984). In *Willoughby Hills*, the Ohio Supreme Court quoted a Seventh Circuit opinion stating that an insurer's "defense obligations will continue until such time as the claim against the insured is confined to a recovery that the policy does not

---

[3]As an afterthought, ACE invites us to certify to the Ohio Supreme Court the question of whether ambiguous policy language requires the insurer to defend the insured until final judgment of the covered claims. We decline. The Sixth Circuit disfavors certification in cases such as this. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610–11 (6th Cir. 2012) (citation omitted) (declining to certify a question where the proponent never raised the issue in the district court and where state law provided "a reasonably clear and principled course").

cover." *Id.* at 558 (quoting *Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178 (7th Cir. 1980)) (internal quotation marks omitted). But ACE reads this quote out of context. *Willoughby Hills* confronted whether the duty to defend may attach later in proceedings, after the insured recognizes that a once-ambiguous complaint asserts a covered claim. *Id.* at 557–58. The Seventh Circuit answered this question in the affirmative then stated the converse: that any duty to defend an ambiguous complaint terminates once it becomes clear that the complaint asserts no covered claims. *Id.* This dictum does not affect the outcome of this case because the complaint in the *Boundas* Action unambiguously asserts a consumer-fraud claim covered by the policy. ACE must defend Abercrombie in the *Boundas* Action.

IV.

We AFFIRM the district court's interlocutory orders enjoining ACE to defend Abercrombie and pay for defense costs already incurred.