OPINION
{¶ 1} Appellant, The Sherwin-Williams' Company, appeals from the June 3, 2003 judgment entry of the Trumbull County Court of Common Pleas, in which the trial court granted judgment in favor of appellee, Niles Manufacturing Finishing, Inc.
 {¶ 2} On October 5, 2000, Plaintiff Don Keyser Company, Inc., d.b.a. All-Purpose Hanger, Inc. ("All-Purpose") filed a complaint for breach of contract/warranty for sale of goods against appellee. On November 22, 2000, appellee filed an answer and third party complaint against appellant alleging breach of contract, breach of warranty, misrepresentation, and indemnity. Appellant filed an answer to appellee's third party complaint on January 18, 2001. On January 8, 2003, appellant filed a motion for leave to file an amended answer pursuant to Civ.R. 15(A), which was granted by the trial court on January 14, 2003.
 {¶ 3} All-Purpose settled its claims against appellee on February 28, 2003. According to the release and settlement agreement, in consideration for All-Purpose dismissing its claims against appellee, appellee promised to pay All-Purpose the sum of $125,000.[1] The release and settlement agreement provides that: "[All-Purpose] agrees that this settlement will be paid on the basis of 50% of the net proceeds of any judgment or settlement obtained by [appellee] from [appellant]."
 {¶ 4} Pursuant to its March 3, 2003 judgment entry, the trial court dismissed with prejudice All-Purpose's complaint against appellee and stated that the case would proceed forward on appellee's third party complaint against appellant.
 {¶ 5} On March 10, 2003, All-Purpose and appellee entered into a modified release and settlement agreement, which is identical to the February 28, 2003 agreement, except that the payment terms were modified to provide for payment by monthly installments. Specifically, the modified release and settlement agreement provides that: "[i]n the event that 50% of the amount of settlement or judgment does not satisfy the settlement amount in full, the balance owed shall be paid by [appellee] in ten equal annual installments, beginning one year after the payment of the settlement or judgment." The modified release and settlement agreement states that the February 28, 2003 agreement is "null, void and of no legal effect."
 {¶ 6} The trial, which commenced on March 10, 2003, was bifurcated by agreement of the parties. The jury determined the breach of warranty and damages issues, and the trial court determined the issues involving indemnity and the duty to defend.
 {¶ 7} The facts at trial revealed that appellee had a contract with All-Purpose, in which appellee would fabricate and paint green garden hangers for shipment to K-Mart retail stores in 1999. Appellee then entered into a contract with appellant for the purchase of green paint which appellee would use to dip coat the garden hangers.
 {¶ 8} The contract provided that: "[appellant] expressly warrants that all articles, materials, and/or work furnished [h]ereunder * * * will be new, fit, and sufficient for the purpose intended and will be free from defects in material and workmanship." The contract stated that: "[appellant] agrees to indemnify [appellee], its successors, assigns, and customers, for all liability, damage, loss, cost, and expense, including incidental and consequential damages and reasonable attorney's fees resulting from breach of any or all said warranties, express or implied." In addition, the contract indicated that: "[appellant] agrees, at its expense, to defend or assist in the defense of any action in any court against [appellee], its successors, assigns, and customers, at [appellee's] option, insofar as such action is based upon alleged facts which amount to a breach of said warranties."
 {¶ 9} Appellee produced the garden hooks for All-Purpose. The garden hooks were delivered to K-Mart stores where they immediately began to rust. After notifying appellant of the problem, employees of appellant tried to make the paint adhere to the metal garden hooks, but were unsuccessful. Appellee then retained another paint supplier and painted the garden hooks successfully.
 {¶ 10} At the conclusion of the liability phase of the trial, the trial court determined that appellant breached its duty to indemnify appellee as well as breached its duty to defend. The trial court determined that appellant is liable to appellee for the amount of its settlement with All-Purpose in the amount of $125,000, and for attorney fees and expenses.
 {¶ 11} On March 20, 2003, the jury returned a unanimous verdict that appellant breached the contractual warranty and determined direct damages to appellee in the sum of $51,667.26.
 {¶ 12} On March 31, 2003, appellant filed a motion for reconsideration of the trial court's ruling on indemnity relating to the purported settlement as well as a motion for records and information relating to the claim for attorney fees. On April 11, 2003, appellee filed a motion for an award of prejudgment interest. On April 25, 2003, appellee filed a motion in opposition to appellant's motion for reconsideration. On April 28, 2003, appellant filed a consolidated opposition to appellee's claims for attorney fees, costs, and prejudgment interest. The trial court conducted a hearing on May 9, 2003.
 {¶ 13} At that hearing, Attorney William Dowling ("Attorney Dowling") testified for appellee that appellee retained his firm, Oldham and Dowling, to represent it on an hourly basis.[2] The fee arrangement changed to a combination flat fee and contingency agreement.[3]
 {¶ 14} Pursuant to its June 3, 2003 judgment entry, the trial court denied appellant's motion for reconsideration. The trial court found that appellee is entitled to interest on its breach of warranty claim in the amount of $51,677.26, and that interest shall run from March 18, 1999, at the per diem rate of $14.15. The trial court determined that appellant is liable to appellee for breach of duty to indemnify in the amount of $125,000, and for attorney fees and expenses in the amount of $90,651.05. The trial court granted appellee's motion for prejudgment interest in the amount of $21,748.55. Thus, the trial court granted judgment for appellee and against appellant in the total amount of $289,066.86 with interest in the amount of ten percent per annum. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 15} "[1.] The court below committed reversible legal error in entering judgment as a matter of law, based on an indemnity claim, against [appellant], as indemnitor, in the amount of $125,000 for a purported underlying settlement between [appellee], as indemnitee, and [All-Purpose], (i) where no underlying settlement consideration was ever paid by [appellee] to [All-Purpose], (ii) based on the terms of two different and conflicting purported settlement agreements, the settlement is contingent on [appellee's] own claim and is a contrivance designed to inflate the claimed damages on a risk-free basis, and (iii) where, even assuming an indemnity claim, the judgment was entered by the court below without proof on the part of [appellee] as an element of its indemnity claim that the amount of the underlying settlement is reasonable.
 {¶ 16} "[2.] The court below committed reversible legal error in entering judgment as a matter of law, based on a claim of contractual indemnity, against [appellant], as indemnitor, in the amount of $90,651.05 for attorneys' fees and litigation costs of [appellee], as indemnitee, in addition to awarding prospective fees on appeal, where [appellee] is not legally entitled to recover indemnity for attorneys' fees and costs and where the amount of the judgment exceeds any underlying obligation on the part of [appellee] to its counsel for such fees and costs."
 {¶ 17} Appellee filed a cross-appeal and raises the following assignment of error:
 {¶ 18} "The trial court erred in failing to award attorney fees to [appellee] for the prosecution of its claim for damages resulting from the breach of warranty by [appellant]."
 {¶ 19} In its first assignment of error, appellant argues that the trial court erred in entering judgment based on an indemnity claim against it in the amount of $125,000 for a purported underlying settlement between appellee and All-Purpose. Appellant contends that no underlying settlement consideration was ever paid by appellee to All-Purpose, the settlement is contingent on appellee's own claim, and judgment was entered by the trial court without proof on the part of appellee as an element of its indemnity claim that the amount of the underlying settlement is reasonable.
 {¶ 20} In Enterprise Group Planning, Inc. v. Savin (Feb. 10, 1994), 8th Dist. No. 65693, 1994 Ohio App. LEXIS 457, at 9, the Eighth District stated that: "[w]here a `contract provides indemnity against liability, the indemnitor becomes liable and the cause of action accrues when the liability of the indemnitee arises.' Firemen's Insurance Co. v. Antol
(1984), 14 Ohio App.3d 428, 429 * * *. The duty to indemnify against a liability arises when the court finds the indemnitee to be liable. SeeOrville Products, Inc. v. MPI, Inc. (Jan. 23, 1992), [8th Dist. No. 59772, 1992 Ohio App. LEXIS 215, at 4-5.]" (Parallel citation omitted.)
 {¶ 21} In Orville, supra, the appellants argued that because the appellee did not yet pay the $250,000 deductible, there was no loss. The appellants contended that until the appellee suffers an actual loss, the indemnification agreement does not require them to indemnify the appellee. However, the court stated that: "[t]he appellee does not have to actually pay the $250,000 to its insurer before appellants' duty to indemnify arises. Appellants' duty to indemnify arose at the point the court in the products liability case found the appellee and Mack Trucks Company to be liable." Id. at 5.
 {¶ 22} With respect to indemnity and the reasonableness of settlements, the Supreme Court of Ohio, in Globe Indemnity Co. v.Schmitt (1944), 142 Ohio St. 595, paragraph four of the syllabus, stated that: "[w]hether the occupier settles the claim voluntarily or pays it by force of a judgment does not affect his right to indemnity. But in an action for indemnity after voluntary settlement, the occupier must prove that he has given proper and timely notice to the one from whom such indemnity is sought, that he was legally liable to respond, and that the settlement made was fair and reasonable."
 {¶ 23} In Sanderson v. Ohio Edison Co. (1994), 69 Ohio St.3d 582, 586, the Supreme Court of Ohio stated that: "* * * where an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily foregoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations."
 {¶ 24} Relying on Sanderson, supra, the Tenth District in TheAndersons, Inc. v. Adam Wholesalers of Toledo, Inc. (Sept. 14, 1999), 10th Dist. No. 98AP-1277, 1999 Ohio App. LEXIS 4220, at 9, held that an indemnitor who refused to defend an indemnitee cannot later contend that the settlement is unfair and unreasonable.
 {¶ 25} In the case at bar, prior to entering into the release and settlement agreement with All-Purpose, appellee notified appellant that it intended to settle with All-Purpose before trial for $200,000 or less, unless appellant agreed to defend and indemnify appellee. Appellee demanded indemnity for the settlement amount and tendered its defense pursuant to a notification sent to appellant on January 29, 2003. Appellant did not agree to indemnify or defend appellee in response to the notification.
 {¶ 26} Again, the contract at issue specifically states that appellant agrees to defend and indemnify appellee for all liability or damage resulting from a breach of warranty. The agreement does not limit the duty to indemnify to amounts actually paid. Pursuant to the release and settlement agreement, appellant is liable to pay the $125,000 settlement amount. We agree with the trial court that appellee's contractual obligation to pay the amount pursuant to the settlement agreement gives rise to appellant's duty to indemnify. Based on Savin, Antol, andOrville, supra, appellant's duty to indemnify arose when the trial court found appellee to be liable.
 {¶ 27} It is irrelevant here that appellant did not pay the total amount of $125,000. Again, appellant unjustifiably refused to defend or indemnify. Pursuant to Sanderson, supra, fraud must be proven in order for appellant to avoid its obligation. In the instant matter, fraud was never alleged by appellant. Thus, the settlement cannot now be challenged. Based on Sanderson and The Andersons, supra, appellant cannot contend here that the settlement is unfair and unreasonable.
 {¶ 28} As previously discussed, both the February 28, 2003 and the March 10, 2003 release and settlement agreements between appellee and All-Purpose provide that in consideration for All-Purpose dismissing its claims against appellee, appellee promised to pay All-Purpose the sum of $125,000. Both the original and modified agreements indicate that the settlement would be paid in the future and specifically state that the settlement will be paid on the basis of fifty percent of the net proceeds of any judgment or settlement obtained by appellee from appellant. The February 28, 2003 agreement did not state that the payment of fifty percent of the net proceeds would satisfy the $125,000 obligation or that it would constitute payment in full. The modified agreement on March 10, 2003, which is basically identical to the original agreement, provided the following additional language: "[i]n the event that 50% of the amount of settlement or judgment does not satisfy the settlement amount in full, the balance owed shall be paid by [appellee] in ten equal annual installments, beginning one year after the payment of the settlement or judgment." As such, the modified agreement clarified how the settlement funds would be paid if fifty percent of the proceeds did not equal $125,000. We agree with the trial court that the March 10, 2003 agreement is a modification of the February 28, 2003 agreement, rather than a new contract. Appellant's first assignment of error is without merit.
 {¶ 29} In its second assignment of error, appellant contends that the trial court erred in entering judgment against it in the amount of $90,651.05 for attorney fees and costs. Appellant alleges that appellee is not entitled to recover indemnity for attorney fees and costs because the amount of judgment exceeds any underlying obligation on the part of appellee to its counsel.
 {¶ 30} A reviewing court should not reverse a trial court's decision regarding attorney fees absent a showing that the court abused its discretion. Bittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143,146. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157. The amount of an attorney fee award is within the sound discretion of the trial court. Bittner at 146. "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." Id.
 {¶ 31} When awarding reasonable attorney fees, the trial court should calculate the number of hours reasonably expended times an hourly fee, modified by an application of the factors listed in DR2-106(B). Id. at 145. Those factors include: "the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." Id. at 145-146.
 {¶ 32} The Supreme Court of Ohio in Allen v. Standard Oil Co. (1982),2 Ohio St.3d 122, paragraph two of the syllabus, stated that: "[w]hen an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnify in a third-party action brought against the indemnitor."
 {¶ 33} In the case sub judice, as previously addressed in appellant's first assignment of error, appellant's duty to indemnify arose when the trial court found appellee to be liable. In its June 3, 2003 findings of fact and conclusions of law, the trial court stated that: "[t]he primary defense of [appellee] was to shift responsibility for the defective goods to [appellant]. By proving that [appellant] breached its warranty to provide a paint fit for its intended purpose, [appellee] established its right to indemnity and thereby effectively defended itself. All time spent by Oldham Dowling proving the breach of warranty by [appellant] is attributable to the defense of the [All-Purpose] claim." We agree.
 {¶ 34} Here, the trial court properly calculated the attorney fees and costs by applying the standard set forth in Bittner, supra, and DR2-106. Appellee's claim for attorney fees is not barred by the terms of the fee agreement between appellee and its counsel. Again, the fee agreement at issue provided that appellee was to pay Oldham and Dowling a $20,000 retainer fee and promised to pay twenty percent of any gross recovery obtained from appellant. We agree with the trial court that the foregoing fee agreement is not exclusively for the direct breach of warranty claim, but rather also includes the defense and indemnity claim as well.
 {¶ 35} The contract between appellant and appellee specifically provides that appellee is entitled to indemnification of reasonable attorney fees. Because appellant continues to dispute its duties to defend and indemnify, the attorney fees incurred by appellee in vindicating its rights on appeal should be recoverable. See TurnerConstr. Co. v. Commercial Union Fire Ins. Co. (1985), 24 Ohio App.3d 1.
 {¶ 36} Based on Allen, supra, because appellant wrongfully refused to defend the action against appellee, appellant is liable for the attorney fees and expenses incurred. We agree with the trial court that appellee's recoverable attorney fees are not limited by its private fee agreement with Oldham and Dowling. See Landis v. Grange Mutual Ins. Co. (1998),82 Ohio St.3d 339. Rather, the trial court properly calculated appellee's recovery of reasonable attorney fees pursuant to Bittner, supra, and DR2-106. Since there is no credible showing that the trial court abused its discretion, there is no reason for this court to reverse. Appellant's second assignment of error is without merit.
 {¶ 37} Turning to appellee's assignment of error on cross-appeal, appellee alleges that the trial court erred in failing to award attorney fees for the prosecution of its own claim for direct damages resulting from the breach of warranty by appellant. Appellee stresses that the correct total amount of fees and expenses to which it is entitled is $114,836.30, plus post-judgment attorney fees, not the award of $90,651.05 awarded by the trial court.
 {¶ 38} In the instant matter, appellee is not entitled to attorney fees for its direct breach of warranty claim against appellant. MeadCorp. v. ABB Power Generation, Inc. (C.A.6, 2003), 319 F.3d 790. Also, although the trial court stated that appellant shall be liable for fees and costs incurred post-judgment, including any and all appeals, any fees and costs on appeal would have to be determined by this court. App.R. 24.
 {¶ 39} As previously discussed, the trial court used the formula set forth in Bittner, supra, as well as applied the DR2-106 factors, in reaching a reasonable amount of $90,651.05 for attorney fees and costs. Pursuant to Bittner, the amount of an attorney fee award is within the sound discretion of the trial court and will not be interfered with unless the amount of the fees determined is so high or so low as to shock the conscience. Again, since there is no credible showing that the trial court abused its discretion in arriving at the amount of $90,651.05, there is no reason for this court to reverse. Appellee's assignment of error on cross-appeal is without merit.
 {¶ 40} For the foregoing reasons, appellant's assignments of error and appellee's assignment of error on cross-appeal are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Rice, J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] According to appellee, fifty percent of the satisfied portion of the judgment has been paid to All-Purpose.
[2] Under the hourly fee arrangement, appellee paid Oldham and Dowling $3,609.31.
[3] Under this agreement, appellee paid Oldham and Dowling a $20,000 retainer fee and promised to pay twenty percent of any gross recovery obtained from appellant.