OPINION
{¶ 1} Appellant, Parkhurst Mall Corporation ("Parkhurst"), appeals the judgment of the Trumbull County Court of Common Pleas.
 {¶ 2} The record indicates that this case began as an administrative appeal from the city of Warren ("city") building department's December 2, 2002 demolition order of a shopping plaza owned by Parkhurst. Appellee, Christopher A. Taneyhill ("TaneyhiN"), interim building official for the city, issued the adjudication order of demolition declaring the vacant buildings unsafe pursuant to Section 115 of the 2002 Ohio Building Code. Parkhurst appealed the city's demolition order to the Ohio Board of Building Appeals ("OBBA"). On February 13, 2003, the OBBA conducted a hearing on the matter. On February 19, 2003, the OBBA issued its decision affirming the city's demolition order. On March 3, 2003, Parkhurst filed an appeal of that decision with the Trumbull County Court of Common Pleas.
 {¶ 3} Since no stay or injunction had been issued pending appeal, the city elected to commence demolition of the plaza in May 2004. After demolition of a portion of the plaza, Parkhurst filed a motion for a temporary restraining order. Thereafter, the parties agreed to submit the matter to the court's magistrate to determine whether an agreement could be reached that Parkhurst would complete necessary rehabilitation to the property within a reasonable time period. As a result of the negotiations, the parties entered into a settlement agreement. The agreement was adopted and filed by the court on August 5, 2004, under the caption "Judgment Entry (Settlement)." The entry was signed by the trial judge, and the attorneys for Parkhurst, TaneyhiN, and the OBBA.
 {¶ 4} The agreed entry provides in pertinent part as follows: Parkhurst agreed to restore a section of the plaza formerly occupied as an Ames Store to a "condition suitable for the leasing or sale * ** [.]" Specifically, Parkhurst agreed to submit detailed construction documents for the rehabilitation project, restore all building utilities and fire protection, and complete demolition on the remaining sections of the plaza that were not part of the renovation project. All work was required to be "substantially performed" within six months from August 5, 2004. The agreement further stated that "[pjrovided that [Parkhurst] complies with this agreement, the [city] is restrained and enjoined from taking further action to demolish the structure, so long that it is maintained as agreed upon in the settlement." The agreement set forth that the parties acknowledged that city would be liable to the demolition contractor, Boccia, under the demolition contract for the demolition that had been earlier initiated by the city. Parkhurst agreed to "defend, indemnify and hold harmless [city] for any and all claims, demands and actions arising out of said contract, including * * * attorney fees." It further provided that, "[a]ll claims, except as provided herein, in this action are settled and dismissed with prejudice."
 {¶ 5} On January 19, 2005, the city filed a motion to vacate the settlement, dissolve injunction, and enforce the order of demolition of the remaining portion of the plaza.[1] At a hearing held on April 29, 2005, the court granted Parkhurst an additional ninety days to perform work required under the settlement agreement.
 {¶ 6} In March 2006, the court, sua sponte, asked all parties to meet with the court at the site of the plaza property to view what work had been performed. Subsequently, an evidentiary hearing on the city's motion was held on November 16, 2005, May 9, and May 10, 2006, to determine whether Parkhurst had breached the settlement by failing to substantially perform under the terms of the agreement. By a judgment entry filed June 7, 2006, the court held that "[t]he injunction * * * is dissolved and [Parkhurst] is found to be in substantial breach of the [agreement of August 5, 2004." The court further affirmed the decision of the OBBA, and awarded the city judgment "against [p]laintiff Donald Guarnieri as signator to the August 5, 2004 agreement in the amount of $78, 986.48 * * * the amount owed Boccia Construction for work done."
 {¶ 7} It is from this judgment that Parkhurst has filed a timely appeal asserting the following ten assignments of error:
 {¶ 8} "[1] The trial court improperly granted [judgment ] against an attorney for the corporation rather [than] the corporation.
 {¶ 9} "[2.] The trial court improperly ruled in favor of defendant when delay was the result of [defendant's] conduct.
 {¶ 1O} "[3.] The trial court [erred] in finding the city employee a proper party to file action without first being tested and passing exam and had no capacity to file the action in the initial stages.
 {¶ 11} "[4.] The finding of the trial court for judgment of an account was not based on any probative evidence.
 {¶ 12} "[5.] Indemnification of a party requires that the court to first, find the debtor to be liable for payment and indemnified party [indebted].
 {¶ 13} "[6.] Trial [court] [erred] in not having `de novo' trial enforcing an agreement between the parties when `[substantial] performance' had been accomplished by plaintiff.
 {¶ 14} "[7.] The state board under which a hearing occurred is [an] unconstitutional body consisting of non-elected members with testing and/or familiarity with tar structure which was tested and found, at [owner's] expense, to be structurally sound.
 {¶ 15} "[8.] The court [erred] in [bifurcating] a hearing on the status of work, evidence; and applicable law.
 {¶ 16} "[9.] The court [used] evidence in the file not connected to the property in question in arriving at a finding from evidence prior to May 7, 2006.
 {¶ 17} "[10.] The trial court mixed and co-mingled [its] [remedies] and decisions between agreement and `de novo' stages to the [detriment] of plaintiff."
 {¶ 18} For purposes of our analysis, we will consolidate certain assignments of error and address others out of the order in which they are presented.
 {¶ 19} At the outset we note that Parkhurst's third, seventh, and tenth assignments of error relate to the city's demolition order and the decision of the OBBA. In Continental W. Condominium Unit Owners Assn. v.Howard E. Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502, the Supreme Court of Court held "[i]t is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party." See, also, Keck v. Health Care Retirement Corp. ofAmerica, 11th Dist. No. 99-L-105, 2000 Ohio App. LEXIS 5915, at 7. A settlement agreement may reserve jurisdiction in the court to enforce the settlement terms even if the case was dismissed. Grange Mutual Cas.Co. v. Paterson, 11th Dist. No. 98-A-0086, 1999 Ohio App. LEXIS 5512, at 7.
 {¶ 20} In its settlement judgment entry, the court expressly retained jurisdiction of the settlement agreement and all other claims were dismissed with prejudice. It follows that any claims of Parkhurst regarding the OBBA's decision, or matters relating to the city's initial demolition order, were not reserved in the settlement agreement and accordingly have been waived. Parkhurst's third, seventh, and tenth assignments of error are without merit.
 {¶ 21} Since Parkhurst's second, sixth, eighth, and ninth assignments of error involve the court's determination that Parkhurst was in breach of the settlement agreement by failing to substantially perform the rehabilitation project, we shall address them together. Parkhurst asserts that evidence was presented to show its substantial performance. Parkhurst further argues that the court erred by improperly relying upon evidence from the OBBA hearing file and that any initial construction delay was caused by the city's failure to timely issue a building permit. We disagree.
 {¶ 22} As a factual finding of the trial court, a decision by the trial court that substantial performance has not occurred will not be reversed unless the finding is against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. A finding supported by some competent, credible, evidence will not be reversed as being against the manifest weight of the evidence. Id. Thus, there is a presumption that the findings of fact as determined by the trier of fact are correct. State, ex rel. Pizza, v. Strope (1990),54 Ohio St.3d 41, 46.
 {¶ 23} The settlement agreement listed necessary repairs to be substantially performed within six months and that time was of the essence. Testimony established that the city withheld approval of the rehabilitation plans based upon Parkhurst's failure to obtain necessary testing. The record reveals that phased approval of the plans was granted by the city on November 29, 2004, and the permit was issued on May 12, 2005. At the hearing, Taneyhill testified that the delay in issuing the permit was the result of Parkhurst's failure to complete necessary testing, and to submit a proper set of documents for plan review. Taneyhill explained that Parkhurst's plans submitted in June 2004, were reviewed by a plans examiner certified by the state of Ohio. The examiner issued a correction letter citing deficiencies in the plans. A correction letter was also sent to Parkhurst's architect. Testimony established that Parkhurst did not begin a renovation project on the roof until sometime in July 2005.
 {¶ 24} Even assuming approval of the plans was unnecessarily delayed, Taneyhill testified that it was reasonable that the entire project could have been completed within a subsequent six-month period. Taneyhill stated that the entire project was only thirty percent complete as of the hearing date of May 9, 2006. At the hearing, photographic exhibits were introduced to show the condition of the building. Testimony established that the roof was not completed, wood and facia were rotted, no work had been performed in the interior, and the exterior parking lot was in bad repair.
 {¶ 25} At the hearing, Parkhurst offered the testimony of Karen Mamula ("Mamula") of Mamula Contracting, L.L.C. She testified that she was hired by Parkhurst as project manager. Mamula indicated that the entire project was about sixty percent completed. She stated that her company provided five employees to work on the Parkhurst project on a daily basis. Mamula estimated that it would take an additional four months to complete the roof before work crews could begin to finish the interior area.
 {¶ 26} Upon reviewing the testimony and exhibits admitted into evidence, we conclude that the trial court's decision that Parkhurst breached the agreement by failing to substantially perform is supported by competent credible evidence. Parkhurst's second, sixth, eighth, and ninth assignments of error are without merit.
 {¶ 27} In its first, fourth, and fifth assignments of error, Parkhurst challenges the court's award of $78,986.48 against Donald L. Guarnieri ("Guarnieri") for costs incurred under the city's demolition contract with Boccia.
 {¶ 28} The settlement agreement provided in pertinent part that "the parties acknowledge that the city had entered into a contract with [Boccia Construction], for the demolition of the entire plaza and that the [c]ity will incur liability if said contract is not performed. Plaintiff [Parkhurst] agrees to defend, indemnify and hold harmless the City of Warren for any and all claims, demands, and actions arising out of said contract, including but not limited to attorney fees." We note that Guarnieri signed the settlement agreement as "attorney for Plaintiff."
 {¶ 29} In its June 7, 2006 judgment entry the court stated in relevant part: "[j]udgment is granted to the [city] * * * against Plaintiff Donald Guarnieri as signator to the * * * agreement in the amount of $78,986.48 being the amount owed Boccia Construction for work done."
 {¶ 30} In its fifth assignment of error, Parkhurst argues that the city must first pay Boccia's claim in order to establish Parkhurst's liability as an indemnitor under the settlement agreement.
 {¶ 31} "Where a `contract provides indemnity against liability, the indemnitor becomes liable and the cause of action accrues when the liability of the indemnitee arises.'" Enterprise Group Planning, Inc. v.Savin (Feb. 10, 1994), 8th Dist. No. 65693, 1994 Ohio App. LEXIS 457, at 9, quoting Firemen's Ins. Co. v. Antol (1984), 14 Ohio App.3d 428, 429. See, also, Don Keyser Co. v. Niles Mfg. Finishing, Inc., 11th Dist No. 2003-T-0089, 2004-Ohio-7228, at ¶ 20. The duty to indemnify against a liability arises when a court finds the indemnitee to be liable.Enterprise Group Planning, at 9.
 {¶ 32} In the case sub judice, the settlement agreement expressly provides for indemnity against liability. Thus, the city was not obligated to pay the amount due Boccia before liability could be imposed on Parkhurst. Parkhurst's fifth assignment of error is without merit.
 {¶ 33} In its first assignment of error, Parkhurst challenges the court's finding that Guarnieri is personally liable for the amount owed Boccia. It is undisputed that Parkhurst is a corporation and that Parkhurst agreed to indemnify the city for expenses owed Boccia for demolition work performed.
 {¶ 34} Generally, the shareholders, officers, and directors are not liable for a corporation's debts. Belvedere Condominium Unit Owners'Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. However, "[t]he corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. paragraph three of the syllabus.
 {¶ 35} Upon reviewing the court's order, it appears that the trial court was attempting to apply the remedy of "piercing the corporate veil" to find Guarnieri personally liable for Parkhurst's liability under the settlement agreement. However, there was no finding by the court that Guarnieri was a shareholder, officer, or director of Parkhurst. The record merely discloses that he is the attorney for Parkhurst. Thus, Parkhurst's first assignment of error is with merit.
 {¶ 36} Based upon our determination in the first assignment of error, Parkhurst's fourth assignment of error, challenging the court's finding of Guarnieri's liability in the amount of $78,986.48 is rendered moot.
 {¶ 37} In sum, appellant's first assignment of error is with merit, its second, third, fifth, sixth, seventh, eighth, ninth, and tenth assignments of error are without merit, and its fourth assignment of error is moot.
 {¶ 38} The judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part, and the matter is hereby remanded for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only.
[1] The court interpreted this motion as a motion to enforce the settlement agreement.