OPINION
{¶ 1} Defendants-appellants, Nicole Gas Production, Ltd. ("Nicole Gas"), Freddie L. Fulson ("Fulson"), Nicole Energy Marketing, Inc. ("Nicole Energy"), and Seaburyson Properties, Ltd. ("Seaburyson"), appeal from the judgment of the Franklin County Court of Common Pleas, in favor of plaintiffs-appellees, American Contractors *Page 2 
Indemnity Company ("ACIC") and Goldleaf Financial, Ltd. ("Goldleaf"), on appellees' claim for breach of an indemnity contract.
 {¶ 2} The relevant factual and procedural history follows. Nicole Gas is a party to several natural gas contracts with Columbia Gas of Ohio, Inc. ("Columbia Gas") and with several Columbia Gas subsidiaries. In 2003, Nicole Gas and Columbia Gas were engaged in litigation in the Franklin County Court of Common Pleas over whether Nicole Gas underdelivered gas under the contracts. While this litigation was pending, Nicole Gas filed a petition with the Federal Energy Regulatory Commission ("FERC"), seeking a declaration that Columbia Gas was required to install meters at each well subject of the contracts. On June 11, 2003, the FERC issued an order declaring that such installations were indeed the responsibility of Columbia Gas. Upon being informed of the FERC ruling, the Franklin County Court of Common Pleas ordered Columbia Gas to comply with the FERC's ruling by installing the meters. Columbia Gas refused, whereupon Nicole Gas filed suit in the United States District Court for the Eastern District of Virginia, seeking injunctive relief to enforce the FERC ruling.
 {¶ 3} On September 22, 2003, the district court granted the requested injunctive relief, but conditioned same upon Nicole Gas posting a bond in the amount of $200,000, later reduced to $150,000. The district court's order specifies that the bond will be paid "[i]f Defendant [Columbia Gas] ultimately prevails in reversing the June 11, 2003 Order entered by the Federal Energy Regulatory Commission (FERC) in Docket No. RP03-243-000, or FERC issues an Order finding that Defendant had no obligation to install and pay for meters as of June 11, 2003 * * *" *Page 3 
 {¶ 4} Through its surety agency, Goldleaf, ACIC posted a surety bond in the amount of $150,000, on behalf of Nicole Gas. As collateral for the bond, Nicole Gas provided $112,330 in cash (held by Goldleaf), and liens on two trucks and an all-terrain vehicle. On October 1, 2003, Nicole Gas, Nicole Energy, Fulson, and Seaburyson all signed a general indemnity agreement in which they agreed to hold ACIC harmless as to any payments made on the bond. Nicole Gas, Nicole Energy, Fulson, and Seaburyson also signed a Pledge of Indemnity in favor of Goldleaf, in which they agreed to hold harmless both Goldleaf and the surety with which Goldleaf had privity, for any payments on the bond, plus attorney fees associated therewith.
 {¶ 5} Meanwhile, Columbia Gas appealed the FERC's ruling to the United States Court of Appeals for the District of Columbia Circuit, arguing that the FERC lacked jurisdiction to interpret or enforce the tariff provision upon which FERC's ruling had been based. On April 15, 2005, the court of appeals ruled "[b]ecause the Natural Gas Act unambiguously denies FERC jurisdiction to issue the orders challenged in the petition for review, we grant the petition and vacate the orders." The court of appeals specifically declined to reach a review of the substantive issue that FERC had decided, that is, whether the tariff at issue required Columbia Gas to pay for the installation of meters at certain wells.
 {¶ 6} Following the court of appeals' ruling vacating the FERC's order, Nicole Gas sent a letter to ACIC requesting that it not pay any amounts on the surety bond. Therein, Nicole Gas contended that because the court of appeals vacated the FERC's order, the condition of Columbia Gas obtaining an order "reversing" FERC's order had not occurred, and the obligation to pay on the surety bond had not been triggered. On July 26, 2005, *Page 4 
however, upon application filed by Columbia Gas, the district court ordered that ACIC and Nicole Gas were jointly and severally liable to pay Columbia Gas $150,000 by August 1, 2005. On July 29, 2005, ACIC tendered payment in full to Columbia Gas. Subsequently, appellees brought the present action seeking to recover the amount of the bond less the value of the collateral, plus attorney fees and expenses associated with enforcement of the general indemnity agreement.
 {¶ 7} Appellees moved for partial summary judgment. Appellants opposed the motion, arguing that ACIC breached its duty to file an appeal of the district court's order before paying on the bond. ACIC responded that, under the terms of the indemnity agreement, it had sole and absolute discretion to decide whether to appeal or to simply pay on the bond. The trial court concluded that ACIC had an implied duty to act in good faith, which included the duty to conduct a reasonable investigation into whether to appeal the district court's order. The court denied the motion for summary judgment because the record, at that time, lacked evidence as to whether ACIC took any actions to conduct an investigation before paying on the bond.
 {¶ 8} The action was referred for a bench trial before a magistrate. Twelve days before the scheduled trial date, appellants filed a motion for leave to amend their answer and to assert a counterclaim for recovery of the collateral for the bond. The trial court referred that motion to the magistrate. Following trial on March 26 and March 27, 2007, the magistrate denied appellants' motion for leave to amend their answer and assert a counterclaim, finding that it was untimely and that granting it would be prejudicial to ACIC and Goldleaf. The magistrate also found in favor of appellees on their claim for breach of the indemnity agreement. *Page 5 
 {¶ 9} The trial court overruled appellants' objections to the magistrate's decision, adopted the magistrate's decision, and awarded appellees their requested attorney fees. The court determined that ACIC did not take opportunistic advantage of appellants and did nothing to injure appellants' rights under the indemnity agreement in deciding to pay on the bond rather than appeal the district court's order, and, therefore, ACIC did not breach its duty to act in good faith. Having concluded that ACIC acted in good faith and could not be estopped from enforcing the indemnity agreement, the court agreed with the magistrate's conclusion that appellants had clearly breached the express terms of the indemnity agreement and were liable for that breach.
 {¶ 10} Appellants timely appealed and present three assignments of error for our review, as follows:
 1. The Trial Court erred in finding, contrary to law, that Defendants-Appellants were liable under an indemnity agreement by applying the wrong standard in determining that Plaintiffs-Appellees did not breach their duty of good faith and fair dealing.
 2. The Trial Court erred, contrary to law, in denying Defendants-Appellants Motion to Amend Answer and to Assert Counterclaim.
 3. The Trial Court erred in awarding attorney fees, contrary to law, to Plaintiffs-Appellees.
 {¶ 11} In support of their first assignment of error, appellants argue that when the trial court ruled on their objections to the magistrate's decision, it employed an incorrect standard to the determination whether ACIC acted in good faith in deciding to comply with the district court's order rather than to appeal it. They argue that the trial court should have applied the "reasonable investigation" standard that it set forth in its decision *Page 6 
denying summary judgment, rather than the "opportunistic advantage" and "injury to rights" standards.
 {¶ 12} For support of this proposition, appellants cite the case ofSuver v. Personal Serv. Ins. Co. (1984), 11 Ohio St.3d 6, 11 OBR 5,462 N.E.2d 415, in which the Supreme Court of Ohio held, "[t]he issuer of a financial responsibility bond has a duty to act in good faith in the handling and payment of claims by one who may be injured by the principal." Id. at paragraph one of the syllabus. Suver is inapplicable herein for two reasons. First, Suver involved a financial responsibility bond issued by an insurance company in lieu of an automobile insurance policy. It did not involve the type of surety bond at issue here. Second, the court in Suver did not set forth specific acts that will constitute the exercise of good faith on the part of an issuer of a financial responsibility bond, such as, e.g., a reasonable investigation of the merits of an appeal from an order to pay on the bond.
 {¶ 13} It is true that there is an implied duty of good faith and fair dealing in every contract. DVCC, Inc. v. Med. College of Ohio, Franklin App. No. 05AP-237, 2006-Ohio-945, ¶ 20. But, as set forth in appellants' brief, the trial court in the present case derived its "reasonable investigation" standard articulated in denying summary judgment from two appellate court cases, one from Oregon and one from Kansas, and a federal district court case from Tennessee. Neither the Supreme Court of Ohio nor this court has articulated a "reasonable investigation" standard for assessing whether a surety acted in good faith in paying on a bond.
 {¶ 14} The Supreme Court of Ohio has described the general duty, implied in all contracts, to exercise good faith and fair dealing as, "[a] compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been *Page 7 
contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." Ed Schory Sons v. Francis,75 Ohio St.3d 433, 443-444, 1996-Ohio-194, 662 N.E.2d 1074. This is precisely the standard upon which the trial court in the present case based its analysis of whether ACIC acted in good faith. In doing so, the trial court followed applicable precedent, and, therefore, made no error of law.
 {¶ 15} Appellants argue that Ed Schory is not applicable because it involved a debtor-creditor relationship and did not involve a principal-surety relationship. We reject this argument, however, because the "good faith" obligation discussed in Ed Schory was thegeneral obligation of good faith and fair dealing upon which appellants relied in mounting their bad faith defense to appellees' breach of contract claim. The trial court determined that the evidence did not demonstrate that ACIC had "taken opportunistic advantage" of appellants, and appellants do not challenge that determination as being against the manifest weight of the evidence.
 {¶ 16} Nonetheless, our review of the record and of the trial court's decision persuades us that it was not against the manifest weight of the evidence. ACIC's in-house bond claim attorney, Patty Chen ("Ms. Chen"), testified that her job involved evaluation of bond claims nationwide. Ms. Chen was assigned to evaluate Columbia Gas' claim for payment on ACIC's injunction bond issued on behalf of Nicole Gas.
 {¶ 17} Ms. Chen reviewed the pleadings and other documents in the file, and considered Nicole Gas' argument that the condition precedent to the duty to pay had not been triggered because the federal court of appeals had not "reversed" the FERC's order, but had "vacated" it. She concluded that any appeal from the district court's order for payment would not likely be successful because 99 percent of such orders are affirmed *Page 8 
on appeal. She testified that in two years of handling "hundreds and hundreds" of claims on bonds, she was aware of only one case in which a reversal was obtained. She also stated that the chances of the order in this case being reversed were even slimmer, because the court of appeals would give greater weight to the district court's order because it was based upon the latter court's interpretation of its own orders. Following performance of a cost-benefit comparison of refusing to pay and appealing (which would require an appeal bond) versus paying the bond amount in full without an appeal, she determined that ACIC would likely end up liable under two bonds if it decided to appeal. Thus, she concluded, the costs far outweighed the potential benefits of appealing, and ACIC should not appeal. Significantly, this cost-benefit analysis was on behalf of appellants, too, since they would have been liable under the indemnity agreement for any costs ACIC incurred in appealing the district court's order.
 {¶ 18} From this, we conclude that competent, credible evidence, going to all essential elements of the bad faith defense, supports the trial court's conclusion that ACIC did not act in bad faith. For this reason, and because the trial court did not make a legal error in evaluating whether ACIC had acted in bad faith and was therefore estopped from enforcing the indemnity agreement, appellants' first assignment of error is overruled.
 {¶ 19} In support of their second assignment of error, appellants argue that the trial court erred in ruling that the magistrate correctly denied their motion for leave to amend their answer and assert a counterclaim. Civ. R. 15(A) provides, in pertinent part, "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served. * * * Otherwise, a party may amend his pleading only by leave of court *Page 9 
or by written consent of the adverse party. Leave of court shall be freely given when justice so requires."
 {¶ 20} A trial court's decision to grant or deny leave to amend is discretionary and will not be reversed on appeal absent a finding that the trial court abused its discretion. Wilmington Steel Products, Inc.v. Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, 121-122,573 N.E.2d 622. "An abuse of discretion connotes more than an error of judgment; it implies a decision, which is without a reasonable basis and one that is clearly wrong." Complete Gen. Constr. Co. v. Ohio Dept. ofTransp. (May 25, 2000), Franklin App. No. 98AP-1619, 2000 Ohio App. LEXIS 2200, at *9, reversed in part on other grounds, 94 Ohio St.3d 54,2002-Ohio-59, 760 N.E.2d 364.
 {¶ 21} Appellants sought leave to amend their answer and assert a counterclaim less than two weeks prior to trial. The magistrate considered the request untimely, as it came over one year after appellants filed their answer, well after the discovery cut-off and dispositive motion deadlines, and on the eve of trial. The magistrate also noted that appellants had offered no explanation as to why the request was so late, and failed to show that there was any new evidence warranting leave. "[W]here a motion for leave to amend is not timely tendered and no reason is apparent to justify the delay, a trial court does not abuse its discretion in refusing to allow the amendment."State ex rel. Smith v. Adult Parole Auth. (1991), 61 Ohio St.3d 602,603-604, 575 N.E.2d 840, quoting Meadors v. Zaring Co. (1987),38 Ohio App.3d 97, 99, 526 N.E.2d 107. The magistrate also determined that the counterclaim would alter the posture of the case and, because trial was so imminent, appellees would be unduly prejudiced in their presentation of a defense to the counterclaim. Under the circumstances presented, we find no abuse of discretion *Page 10 
in the trial court's determination that the magistrate did not err in denying leave to amend. For this reason, appellants' second assignment of error is overruled.
 {¶ 22} In support of their third assignment of error, appellants argue that the trial court erred in awarding attorney fees to appellees. Paragraph two of the indemnity agreement provides that appellants agreed to indemnify and hold ACIC harmless against "any and all * * * attorneys' fees and expenses of whatever kind or nature together with interest thereon * * *." Paragraph 3.5 of the indemnity agreement provides "[i]n any suit on this Agreement, Surety may recover its expenses and attorney's fees, * * * costs and expenses incurred in suit."
 {¶ 23} Appellants argue that the trial court erroneously relied upon Ms. Chen's testimony for its award of attorney fees, since Ms. Chen stated she only made a "cursory review" of the attorney fee bills and that it was Mr. Lanak, her supervisor, who reviewed the bills and approved payment. Because Mr. Lanak did not testify, appellants maintain, appellees presented no evidence that the requested fees were reasonable and necessary. Thus, they argue, the attorney fee award was unsupported by the evidence.
 {¶ 24} In response, appellees point out that the indemnity agreement does not limit recovery to only "reasonable and necessary" attorney fees. Its plain language provides for payment of "any and all" of ACIC's and Goldleaf's attorney fees. We agree. Review of the indemnity agreement reveals no language limiting an award of attorney fees to only those fees proven to be "reasonable and necessary." It is axiomatic that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, *Page 11 509 N.E.2d 411, paragraph one of the syllabus.[1] "When enforcing an indemnity agreement, the court must determine the intent of the parties from the language of the indemnity contract." Capitol Indemn. Corp. v.Weatherseal Roofing Renovations, Inc., Lucas App. No. L-02-1174, 2003-Ohio-3982, citing Worth v. Aetna Cas. Sur Co. (1987),32 Ohio St.3d 238, 240, 513 N.E.2d 253, reversed in part on other grounds inWorth v. Huntington Bancshares, Inc. (1989), 43 Ohio St.3d 192,540 N.E.2d 249. "[T]he language of the indemnity agreement controls the issue of whether the surety may charge the principal for the surety's defense fees and expenses." Id.
 {¶ 25} Here, appellees presented evidence as to the amount of attorney fees they expended in order to enforce the indemnity agreement. Pursuant to the plain language thereof, appellees met their burden of proof and were entitled to the fees that the trial court awarded to them. Accordingly, appellants' third assignment of error is overruled.
 {¶ 26} Having overruled all three of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE and TYACK, JJ., concur.
[1] Appellants cite no case law for support of their third assignment of error, and we note that the cases requiring that attorney fees be proven to be "reasonable and necessary" involve statutes or contracts whose plain language limits a prevailing party to recovery of "reasonable and necessary" fees. See, e.g., Bittner v. Tri-Cty. Toyota,Inc. (1991), 58 Ohio St.3d 143, 569 N.E.2d 464 ("reasonable attorney's fee" available to prevailing party for knowing violation of Consumer Sales Practices Act); Don Keyser Co. v. Niles Mfg. Finishing,Inc., Trumbull App. No. 2003-T-0089, 2004-Ohio-7228, discretionary appeal not allowed, 105 Ohio St.3d 1519, 2005-Ohio-1880, 826 N.E.2d 316
(contract provided for indemnification of "reasonable attorney fees"). *Page 1